## BRATTON v. LOWRY.

1. MARRIED WOMEN—CASE CRITICISED.—The law as to the liability of married women on notes signed by her, as declared in the case of Hibernia Savings Institution *v.* Luhn, 34 S. C., 186, approved.

2. IMPEACHING VERDICTS.—New trial moved for on the ground that a juror had declared that the verdict was rendered or hastened by an alarm of fire in the town, properly refused. Verdicts should not be disturbed by declarations of jurors made after their discharge.

3. RECEIPTS—AGREEMENT—CONSTRUCTION.—Plaintiff holding a note signed by A and B, who were wife and husband, and another note signed by B and endorsed by A, had a settlement of other matters with B, and as a result of that settlement executed the following paper: "Received of B $133, balance due me on final settlement to this date, the same to be credited on the note due myself by A and B." Plaintiff entered a credit of $133 on the note of B endorsed by A. *Held*, that so much of this receipt

as declared that the credit should be given on the note due by A and B, was evidence of an agreement had between the parties which should have been construed by the court, and construed to refer to the note signed by A and B and not to the note signed by B and endorsed by A.

4. NEW TRIAL NISI ordered by the Supreme Court.

Before ALDRICH, J., York, April, 1892.

Action by J. Rufus Bratton against M. B. Lowry and John F. Lowry, commenced September 29, 1890.

*Messrs. Jones & Williams,* for appellants.

*Mr. W. B. McCaw,* contra.

June 27, 1893.   The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.   The defendant, M. B. Lowry, is the wife of her codefendant, John T. Lowry, and the sister of the plaintiff, J. Rufus Bratton.   The complaint alleged that on July 13, 1885, M. B. Lowry and John T. Lowry, the former as principal and the latter as surety, covenanted with the plaintiff, J. Rufus Bratton, under their hands and seals, to pay to the plaintiff, J. Rufus Bratton, or to his order, the sum of five hundred dollars, borrowed money, with interest at ten per cent. from date, as will more fully appear by the following copy of the said note, to wit:

"One day after date, for value received, we or either of us promise to pay J. R. Bratton or order five hundred dollars, interest at 10 %.   Witness our hands and seals, this the 13th July, 1885.   (Signed)       M. B. LOWRY.     [L. S.]
                                          JOHN T. LOWRY.   [L. S.]"

It alleged that no part of the note had been paid, and demanded judgment thereon for the amount due and interest.

The defendants answered separately, and after being allowed to amend their answers, they were as follows: Mrs. M. B. Lowry admitted the execution of the note, but pleads that (1) she signed the note not as principal, but as surety; (2) interposes a general denial; (3) and for a further defence alleges that at the time she signed the note she was a married woman, and that said note was given for money borrowed by her husband,

John T. Lowry, and for his use, and was a contract which did not concern her separate estate. John T. Lowry also admitted the execution of the note sued on, but (1) denied that Mrs. Lowry signed the note as principal and he as surety; (2) claimed that on December 10, 1889, he paid the plaintiff in settlement $133, which should have been credited on the note in suit; and (3) that the note was given for money borrowed of plaintiff by himself, and did not relate to the separate estate of his codefendant, M. B. Lowry, who at that time was and is now his wife.

There was much conflicting testimony as to who made the contract for and received the borrowed money, for which the note sued on was given, and also as to the credit, which the defendants claimed should have been placed on the note in suit. The testimony is all printed in the record, including certain papers or "receipts," relating to the credit of $133, claimed by the defendants. It seems that upon some "settlement" between the parties, the plaintiff fell in debt to J. T. Lowry in the sum of $133; but as Lowry owed the plaintiff a larger sum, the agreement was that Lowry should receipt for that sum, and that Bratton would give him credit for the same. The following papers were proved: "No. 1. Received December 10th, 1889, of J. R. Bratton [J. T. Lowry] one hundred and thirty-three dollars, balance due me in final settlement to this date, the same to be credited on the note due myself by M. B. Lowry and J. T. Lowry. (Signed) J. R. Bratton." The respondent admitted that the name of "J. R. Bratton," in the body of the receipt, should be "J. T. Lowry." At the same date, J. T. Lowry gave J. R. Bratton the following receipt: "No. 2. Received December 10th, 1889, or Dr. J. R. Bratton, one hundred and thirty-three dollars, in full of all settlements up to date. (Signed) John T. Lowry." No. 3. At the time this settlement was made, John T. Lowry owed J. R. Bratton another note, as follows: "One day after date, for value received, I promise to pay J. R. Bratton or order one hundred and seventy-seven dollars. Witness my hand and seal, January 15, 1889. (Signed) John T. Lowry." This note was endorsed by Mrs. M. B. Lowry, and had written on it the following credit: "No. 4.

Rec'd December 10, '89, of J. T. Lowry, on the within note, one hundred and thirty-three dollars, and gave a loose receipt for the same." (This credit is in Dr. Bratton's handwriting.) The defendants insisted that the credit for $133 was erroneously placed on the note for $177 (No. 3), instead of the note in suit, and that the credit of that amount, as of the date of December 10, 1889, should be allowed in the verdict.

Under a full and careful charge upon the two principal points made, the jury found a verdict for the plaintiff for $837.50, being the whole amount, with interest, due on the note in suit, without allowing any credit. The defendants moved for a new trial on the minutes of the court, and that being refused, they now appeal to this court upon the following exceptions:

I. Because his honor erred in charging the jury that "where, however, a married woman borrows money or buys a horse from another, and by her conduct or representations induces the lender, or the vendor, as the case may be, to suppose that she is borrowing the money or buying the horse for her own use, when, in fact, her purpose (unknown to the party with whom she is dealing) is to obtain the money or the horse for her husband, or somebody else, she will be estopped from denying that what she herself had induced the lender or vendor to believe was true, upon the ground that it would be a fraud to allow her to repudiate a contract which she had induced the person with whom she dealt to believe she had the power to make, when, as a matter of fact, she had no such power. She is estopped from disputing that the fact is as she represented it to be." [1]

II. And in charging: "Now, gentlemen, the law is, that a married woman, under the power given to her by law, may borrow money, and when she borrows it, and takes possession of it, then the money becomes her separate estate, and she is liable to the person from whom she borrowed it. I think that covers very nearly all the law in the abstract in this case."

III. Because the foregoing charges were especially erroneous as applied to the case at bar, being a suit upon the joint and several note of wife and husband; and if the money was de-

[1] See 34 S. C., 186.

livered to her in the presence of her husband on said joint and several note.

IV. Because, it is respectfully submitted, his honor erred in charging the jury as follows: "Now, the question, then, is, to which debt was the $133 payment applied? Was it to the smaller note of $177, or to the $500 note, the cause of action? If it was applied to the $500 note, the cause of action, why, then, both defendants, if you hold them responsible, would be entitled to a verdict to that extent. If, however, under instructions of defendants, that was applied to the $177 note, then no credit could be allowed in this case. That is a question for you to determine." Whereas his honor should have construed the receipt No. 1 himself, which made the application to the note of "M. B. Lowry and John T. Lowry," and not have left the same to the jury to construe.

V. Because his honor erred in refusing the motion of appellants for a new trial on the ground that before the verdict was published, information was given to the court, by one of the jurors, that some of the jurors had said "the verdict was reached or hastened by an alarm of fire in the town."

VI. Because his honor erred in refusing the motion of appellants for a new trial on the ground that the jury should have credited the note in suit with $133 paid thereon on December 10, 1889, as evidenced by receipt "Exhibit B," &c.

Exceptions 1, 2 and 3 complain of error in the charge of the judge as to the rights of Mrs. M. B. Lowry, a married woman. There was conflicting testimony as to the question of fact—whether Dr. Bratton lent the money to his sister, for the benefit of her separate estate, or to her husband, John T. Lowry; but upon that subject, the jury found all the facts for the plaintiff. This court has so often, and so lately, considered the very question here made, that we do not think it can be necessary, or even proper, to go into the subject again. We see no error in the law as charged. See *Hibernia Savings Institution* v. *Luhn,* 34 S. C., 184, and the authorities there cited.

Exception 5 claims that the judge should have ordered a new trial, on the ground that before the verdict was published, in-

formation was given to the court by one of the jurors, that "some of the jurors had said that the verdict was rendered or hastened by an alarm of fire in the town." The judge, in refusing a new trial on that ground, fully indicated his ruling, saying that any member of the panel who did not concur in the verdict had the right to object before the verdict was published, but there was no such objection. The truth is, the court cannot lend a ready ear to disclosures coming from the jury room. The court is bound to take the verdict as rendered, and refuse to listen to any affidavits of jurors tending to impeach it. A contrary practice would lead to endless confusion. See *Smith* v. *Culbertson*, 9 Rich., 111; *State* v. *Tindall*, 10 *Id.*, 212; *State* v. *Nance*, 25 S. C., 172.

Exceptions 4 and 6 complain that the judge erred in referring it to the jury, to determine, as a fact, whether the credit of $133 should be placed on the small note for $177 (No. 3), or on the large note for $500, now in suit. We agree with the Circuit Judge, that a simple receipt for so much money may be explained or modified by parol on the principle stated in *Heath* v. *Steele*, 9 S. C., 86, as follows: "In itself, a receipt does not express the terms of any contract or meeting of the minds of the parties, but merely evidences by way of admission the fact stated in it; consequently, it is not governed by the rules that prescribes the effect of instruments adopted by parties as the special means of evidencing 'some compact or understanding had between them,' but like evidence, not enjoying any special privilege, it is capable of being contradicted or modified by other classes of evidence," &c. This shows that it is only to receipts pure and simple the doctrine applies, and that it does not include a case where "the instrument is adopted as the special means of evidencing some compact or understanding had between the parties." Is this not such a case? It seems to us that the matter here falls clearly within the exception declared. We think that the paper signed by Bratton, the plaintiff, marked "No. 1," was not only the acknowledgment of the receipt of so much money (in fact, no money was then received), but it was more—it was an undertaking that the money should be credited on a particular note,

describing it, though very imperfectly—*"to be credited on the note due myself by M. B. Lowry and J. T. Lowry."*

This understanding, though expressed in a perfunctory manner, was in writing, and should have been interpreted by the court, instead of being referred to the jury. "The rule is well settled, that the construction of the terms of a written contract is a question for the court and not for the jury." *DeCamps v. Carpin,* 19 S. C., 124, and authorities cited. Then how should the court have interpreted the paper No. 1? It seems that the plaintiff, Dr. Bratton, had two notes, which J. T. Lowry and his wife had signed—one for $177, which John T. Lowry signed as maker, and his wife's name was written across the back as endorser; and the other note for $500, now in suit, which both M. B. Lowry and J. T. Lowry (and in the order stated) had signed as principals. Under these circumstances we can not doubt that the proper interpretation of the paper No. 1 was that the $133 was intended to be credited on the note now in suit, for $500, *"due John R. Bratton by M. B. Lowry and J. T. Lowry."* We think this note thus signed, putting the name of Mrs. Lowry first, more fully answers the meagre description of the paper No. 1; that it should have been so interpreted by the Circuit Judge, and, under his direction, the credit given by the jury. It is not clear to us how the words, "to be credited on the note due myself by M. B. Lowry and J. T. Lowry," could refer to a note signed by J. T. Lowry, with his wife's name on the back simply as an endorser, when there was another note, signed "by M. B. Lowry and J. T. Lowry" as principals. In the view the court takes, the verdict should have been reduced by crediting the $133 on the $500 note, the cause of action, as of the date of December 10, 1889. The calculation on this basis shows that on April 12, 1892, when the verdict was rendered, the amount due was $704.65.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and a new trial ordered, *unless* within ten days after notice of this judgment the plaintiff, or his attorney of record for him, release on the record of this case all the verdict rendered, except the sum of seven hundred and four dollars and sixty-five cents; and re-

duced to that amount, the judgment for that sum be affirmed, as of the day the verdict was rendered.