[Sac. No. 7002.   In Bank.   Dec. 12, 1958.]

MARJORIE COATES et al., Appellants, v. JESSIE ROBSON CHINN et al., Respondents.

Laura O. Coffield, Charles R. Garry, Francis J. McTernan and Garry, Dreyfus, McTernan & Keller for Appellants.

Taft, Wright & Hopkins and Cranson L. Hopkins for Respondents.

SPENCE, J.—Plaintiffs are the widow and minor child of Kenneth Coates, who was killed when his automobile struck a large limb which had fallen from a eucalyptus tree onto the highway. The tree was part of a row of eucalyptus trees growing on the property of defendants. At the conclusion of plaintiffs' evidence, a motion for nonsuit was granted. Plaintiffs appeal from the judgment accordingly entered.

Plaintiffs based their complaint on two theories: (1) nuisance, because the limb from defendants' eucalyptus tree unlawfully obstructed the highway (Civ. Code, § 3479; Pen. Code, § 370); and (2) negligence, because defendants permitted the limb to extend over the highway without taking reasonable precautions to guard against its falling.

In determining whether the granting of the nonsuit was proper, the appellate court must resolve every conflict in the testimony in favor of plaintiffs, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of plaintiffs, and ac-

cept as true all evidence adduced, direct and indirect, which tends to sustain plaintiffs' case. (*Lashley* v. *Koerber*, 26 Cal. 2d 83, 84-85 [156 P.2d 441]; *Wickoff* v. *James*, 159 Cal.App. 2d 664, 667-668 [324 P.2d 661].) Relying upon this rule, plaintiffs properly maintain that they were entitled to have their case submitted to the jury, and that the judgment entered upon granting the nonsuit must be reversed.

The accident occurred on the highway near Oakville, Napa County, on November 14, 1954, at about 6 :30 p.m. It was dark and it had been raining. Decedent was driving between 45 and 50 miles an hour. Mrs. Coates was sitting in the front seat beside the deceased, and their son was in the rear seat. According to Mrs. Coates, the end of a broken limb 6 to 8 inches in diameter suddenly loomed up in front of the car, and there was no way of avoiding it. The jagged end of the limb came through the windshield, killing the deceased and seriously injuring Mrs. Coates.

Plaintiffs first argue that the maintenance of the row of eucalyptus trees along the edge of the highway in the manner shown by the evidence constituted an obstruction and created a nuisance (Civ. Code, § 3479; Pen. Code, § 370), so that defendants became insurers against accidents of persons properly traveling along the highway. They cite cases where the street obstruction was deemed *"per se* a wrongful encroachment" (*Curtis* v. *Kastner*, 220 Cal. 185, 188 [30 P.2d 26]) and constituted a nuisance, imposing absolute liability, irrespective of negligence in its creation or maintenance. (*Elm* v. *McKee*, 139 Cal.App.2d 353 [293 P.2d 827].) The obstructions in the cited cases arose from the intentional invasion of the plaintiffs' interests. (See also *Stockton Automobile Co.* v. *Confer*, 154 Cal. 402 [97 P. 881].) ▇ But here there was no such intentional act, for so long as the trees and their limbs remained in place alongside of the road, they did not constitute an obstruction to free travel thereon; and it was only the falling of the limb that created the obstruction. Defendants' liability was therefore not absolute and it can be predicated only upon a showing of negligence. ▇ As stated in Prosser on Torts (2d ed. 1955), page 392: "a nuisance may also result from conduct which is merely negligent, where there is no intent to interfere in any way with the plaintiff, but merely a failure to take precautions against a risk apparent to a reasonable man." Accordingly the merits of plaintiffs' appeal must be determined in relation to the reasonableness of defendants' conduct under all the circum-

stances. (*Calder* v. *City & County of San Francisco*, 50 Cal. App.2d 837, 840 [123 P.2d 897].)

A long recognized "test for determining the issue of negligence is whether a person of ordinary prudence should have foreseen or anticipated that someone might be injured by his action or nonaction." (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 216 [157 P.2d 372, 158 A.L.R. 872].) Or, as sometimes stated: "Negligent conduct may be either: (a) an act which the actor as a reasonable man should realize as involving an unreasonable risk of causing an invasion of an interest of another, or (b) a failure to do an act which is necessary for the protection or assistance of another and which the actor is under a duty to do." (Rest., Torts, § 284.)

The eucalyptus trees planted alongside the highway constituted "a nonnatural or artificial condition" created on the land as distinguished from a "natural condition" of the land, "irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." (Rest., Torts, § 363, com. b.) In·determining the question of liability for injury caused by such artificial condition, it is further said: "A possessor of land is subject to liability for bodily harm caused to others outside the land [which includes the adjacent highway] by a structure or other artificial condition thereon, which the possessor realizes or should realize as involving an unreasonable risk of such harm if (a) the possessor has created the condition, or . . . (d) the possessor when he takes possession knows or should know of the condition which was created before he took possession." (Rest., Torts, § 364.)

Here the record shows that the trees were permitted to grow to considerable size, that defendants knew that their limbs had been falling for years, and that the limb with which plaintiffs collided had extended out over the highway some 30 feet. A tree surgeon familiar with the area testified that the limbs of the tree here involved were healthy, and that he saw no evidence of rot, decay, or disease. However, he stated that in Napa County eucalyptus trees grow very fast and become rangy; that their limbs have a tendency to break during the hot days of summer, because of the excessive flow of sap, and in the early fall with the first rains and winds; and that the trees will drop their limbs, even good healthy ones. He further testified that the standard method of preventing eucalyptus trees from becoming a hazard is to top them and shorten their limbs, so as to reduce the amount of leverage

at the points where the limbs are apt to break; and that he performed this service for 10 or 15 clients a year. Defendant Mrs. Chinn, called under section 2055 of the Code of Civil Procedure, testified that she had been told that eucalyptus trees drop their limbs; that the limbs do not fall regularly, but fall at times; that "it is the nature of the tree." She further stated that the trees had been growing along the road as long as she could remember; that she did not know when they had been planted; that in the last five years she had had no work done on the trees by a tree surgeon; and that so far as she could see, the trees were perfectly healthy.

In view of this evidence, plaintiffs properly contend that it was a question of fact whether defendants acted as reasonably prudent persons in permitting the eucalyptus trees to grow alongside the highway without taking any precautionary steps to control their natural propensity to drop their limbs, particularly during the rainy weather of. the early fall when the accident happened. Accordingly, plaintiffs were entitled to have their case submitted to the jury on this issue of negligence. (See *Mosley* v. *Arden Farms Co., supra,* 26 Cal.2d 213, 217.)

This is not a case of damage caused by the fall of a tree onto a highway where disease had attacked the tree and rotted the roots but reasonable inspection of the tree prior to its fall would not have revealed the defect. While the landowner has not been held liable in that situation (*Caminer* v. *Northern & London Investment Trust, Ltd.,* 2 K.B. 64 [11 A.L.R.2d 617]; see also note, 11 A.L.R.2d 626), here the distinguishing factor is the natural propensity of healthy, untrimmed eucalyptus limbs to fall to the ground and defendants' knowledge of such propensity.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.