446 P.2d 492

**Gail S. CARVER, Appellant,**

v.

**SALT RIVER VALLEY WATER USERS' ASSOCIATION, a corporation and County of Maricopa, a political subdivision of the State of Arizona, Appellees.**

**No. 1 CA–CIV 577.**

Court of Appeals of Arizona.

Oct. 31, 1968.

Rehearing Denied Dec. 4, 1968.

Review Granted Jan. 21, 1969.

Kramer, Roche, Burch, Streich & Cracchiolo, by Robert E. B. Allen, Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, by Rex H. Moore, and William R. Jones, Jr., Phoenix, for appellee Salt River Valley Waters Users' Association.

McKesson, Renaud, Cook & Miller, by J. Gordon Cook, and Joseph B. Miller, Phoenix, for appellee County of Maricopa.

MOLLOY, Judge.

A tree fell over on plaintiff's car as she was driving on a public highway in Maricopa County. She brought suit for her injuries against the county, which maintained the highway, and against the Salt River Valley Water Users' Association, which maintained an irrigation ditch on the land where the tree was located, alleging that the tree constituted a nuisance and that defendants were guilty of negligence in permitting it to stand.

When the case came to trial, the trial judge excluded a number of witnesses called by plaintiff because of her failure to set forth their names in answers to interrogatories propounded by the defendant county. Plaintiff thereafter sought a continuance because of the ruling excluding witnesses, which was denied. Certain photographs offered by plaintiff were also excluded from evidence, and at the close of plaintiff's

case, the trial judge directed a verdict in favor of both defendants. Plaintiff brings this appeal, challenging the correctness of these rulings.

The accident occurred on a windy day. Plaintiff was driving southward on 67th Avenue, a paved county highway near Glendale. Just west of, and parallel to 67th Avenue, partly on the public right of way, was a lateral irrigation ditch which was maintained by the defendant Salt River. The tree which fell was a large cottonwood. Its trunk, located about five feet outside of the highway right of way, was separated from the pavement by the Water Users' ditch. The tree was one of a row of cottonwoods located in or along the west bank of the ditch.

After disposition of preliminary motions and the undertaking of various discovery procedures, plaintiff's attorneys in October, 1964, filed and served a "certificate of readiness and motion to set" purusant to Rule V of the Uniform Rules of Practice of the Superior Court, 17 A.R.S. A pre-trial conference was held on March 30, 1966. The pretrial order set the cause for trial by jury on September 6, 1966. The order provided that "[a]ll parties will have the right to make additional discovery up to twenty days prior to the trial date."

Two days after the pretrial conference, the defendant county served a set of inter-rogatories on plaintiff pursuant to Rule 33 of the Rules of Civil Procedure, 16 A.R.S. One interrogatory, No. 22, asked if plain-tiff was aware of any written statement or report of the accident made by or con-cerning the knowledge of any witness or purported witness. That interrogatory was answered "[n]o," although plaintiff's coun-sel had received, in August of 1963, an acci-dent report made out by Deputy Sheriff Pitts, whom plaintiff sought to call as a witness at the trial. Interrogatory No. 25 asked plaintiff to state the name of every witness believed or understood by plaintiff to have knowledge concerning the accident " * * * regardless if the knowledge is prior to, during or subsequent to such acci-dent." Plaintiff's answer gave the name of only one person, Eugene Reems, who lived near the scene of the accident. Inter-rogatory No. 27 asked if plaintiff knew of any investigation or tests made concerning the accident. This was answered "[n]o." No. 28 asked for the name of any witness with knowledge that the previous condition of the tree was such that a reasonable per-son should have known that it was likely to fall. This latter interrogatory goes directly to the critical liability issue of this case. It was answered "[n]one." At trial, in ad-dition to Deputy Pitts, plaintiff sought to call as witnesses one Professor Decker, a tree physiologist, who had examined the stump of the tree in April, 1963, at the re-quest of plaintiff's attorneys, and plaintiff's daughter, who had visited the scene with plaintiff some three weeks after the acci-dent.

On August 31, 1966, which was six days prior to trial with a three day Labor Day weekend in the interim, the two attorneys who were to try the case for plaintiff went to view the scene of the accident and meet with the prospective witness Reems. They found that Reems was not at home and it was thereafter discovered that he was away on an extended vacation. He had not been subpoenaed. The two attorneys then un-dertook a neighborhood survey in search of persons having knowledge of the condition of the tree. No such survey had been pre-viously conducted. They found that one Sherrill, a neighbor of Reems who lived "approximately across the street from the scene of the accident," and who had lived in the same place for some 25 years, had come upon the scene shortly after the acci-dent, and had knowledge of the previous condition of the tree in question.

The two attorneys then returned to their office and first attempted to call, and then wrote counsel for both defendants stating that plaintiff intended to call as witnesses Mr. Sherrill, Professor Decker, Deputy Sheriff Pitts, and possibly another person not yet interviewed. These letters stated that the information was being sent to counsel in view of the answers sought by the defendant county's interrogatories.

They both closed with a statement to the effect that, if counsel wished to request a continuance, plaintiff's counsel would have no objection.

The parties convened for trial at the previously scheduled time on September 6, 1966. Prior to commencement of trial, both defendants moved to exclude as witnesses for the plaintiff all of the persons named in the recent letters by plaintiff's attorneys on the grounds that they were not referred to in plaintiff's answers to interrogatories or suggested as witnesses until after the twenty-day pretrial discovery deadline had passed. After the court had sustained defendants' motion, plaintiff moved for a continuance, "[i]n view of the ruling of the Court and in view of the fact that Mr. Reems, the other witness, is not available, * * *" Defendants objected, and the motion was denied.

In presenting plaintiff's case, her attorneys elicited testimony from plaintiff, medical witnesses, and one agent of each of the defendants called for cross-examination. Plaintiff also sought to call her daughter, primarily on the theory that her testimony would corroborate plaintiff's on the post-accident condition of the trunk of the tree. Defendants moved to exclude the daughter on the same basis urged in the previous motion to exclude. This motion was also granted.

Against this background, plaintiff argues that the trial judge abused his discretion in excluding the testimony of plaintiff's witnesses and in failing to grant a continuance. Plaintiff's attorneys concede their neglect in failing to list the proffered witnesses in their answers to defendant's interrogatories, but contend that defendants made no showing that they would be prejudiced by having the witnesses in question testify, and that, in the absence of such a showing, the "extreme" sanction of exclusion should not have been imposed.

■ Our Rules of Civil Procedure are designed to promote decisions on the merits after a full and fair hearing, and the sanction of exclusion of a witness should never be lightly invoked. Still, a failure to disclose the names and addresses of witnesses in response to interrogatories " * * * constitutes a deprivation of the substantial rights of the propounding party." Burke v. Central Railroad Company of New Jersey, 42 N.J.Super. 387, 126 A.2d 903, 907 (1956). Many variable circumstances determine whether a sanction is appropriate and if so, what sanction should be imposed. The precise nature of the interrogatories and discovery posture of the case, willfulness and the degree of prejudice are some of the important factors. There are cases holding that under some circumstances, exclusion is inappropriate, King v. Cardin, 229 Ark. 929, 319 S.W.2d 214 (1959); Young v. Saroukos, 189 A.2d 437 (Del. 1963), and other cases holding exclusion justified. Thompson v. Calmar Steamship Corporation, 331 F.2d 657 (3d Cir. 1964); Gebhard v. Niedzwiecki, 265 Minn. 471, 122 N.W.2d 110, 113–116 (1963). The decision is very largely a matter within the sound discretion of the trial court. Texas and Pacific Railway Company v. Buckles, 232 F.2d 257 (5th Cir. 1956).

■ In this case, the interrogatories were submitted to and answered by plaintiff after the pretrial conference, which followed plaintiff's filing of her certificate of readiness and motion to set the case for trial. We believe that it would be normal procedure, and that it is proper, for opposing counsel to rely upon such answers in preparing their case and in consulting with their clients as to settlement authority. Plaintiff's answers under any view of the facts were misleading. Known witnesses were not disclosed. Equally misleading under these circumstances, is the failure to make a reasonably diligent effort to discover evidence. When a plaintiff files a lawsuit, proceeds to a pretrial conference, and thereafter unequivocally answers that there are no known witnesses on the key liability issue, our view is that the defendant is unfairly deprived of an opportunity to prepare for trial if the plaintiff in the last few days prior to trial conducts the investigation that should have been long

since completed and turns up critical liability evidence at this time.

If answers to critical questions such as these can be rendered meaningless by oversight, or worse, and by last minute scurrying around for witnesses, then we will be turned back to the dark ages of trial when the result hinged upon the surprise impact of cleverly concealed evidence and when settlement of litigation without trial was pure guesswork.

■ As for prejudice, no party profits from delay in trial, and all continuances result in disruption of scheduling for court and counsel. While the granting of a continuance, Young v. Saroukos, supra, or a voluntary dismissal without prejudice, Burke v. Central Railroad Company of New Jersey, supra, or even a new trial, Newsum v. Pennsylvania R. Co., 97 F. Supp. 500 (D.C. 1951), might in some circumstances be proper, we cannot say that for flagrant violations, such as the trial court apparently found to be the case here, the exclusion of evidence is too extreme a sanction. We refuse to reverse because of the trial court's ruling on the motion to exclude testimony.

Appellant also claims that the trial court erred in refusing to admit into evidence four photographs depicting the condition of other trees in the row of cottonwoods along the side of the irrigation ditch. Defendants objected to their introduction on the grounds of relevancy and lack of foundation. We are unable to find in the record any proper foundation for three of of these exhibits. As to one exhibit, Exhibit 14, however, we find sufficient foundation in the testimony of the plaintiff to the effect that this is a representation of the area three weeks after the accident, differing in the additional "debris and limbs scattered around" which were present at that time and not shown in the picture. The photograph shows three or more other cottonwoods all in the immediate vicinity of the tree that hit plaintiff's car. All are large trees leaning over the ditch toward the highway. There are several large limbs broken from one tree, lying on the ditch bank, and there are gaps in the limb and foliage structure of the trees of such size and shape as to suggest that other large branches had been separated from their main stem in past windstorms.

■ The trial judge took the position in ruling upon all offers that only the appearance and condition of the particular tree that hit plaintiff's car had any relevance to the issues of this case. We do not agree. It is our view that, in order to "complete the story," see Newman v. Piazza, 6 Ariz.App. 396, 400, 433 P.2d 47, 51 (1967), the plaintiff was entitled to present evidence of the appearance and condition of this row of trees, which together might be considered to be an unreasonable risk to travelers on the adjacent highway. See Coates v. Chinn, 51 Cal. 2d 304, 332 P.2d 289 (1958); McCormick on Evidence § 167, at 352 (Hornbook Series 1954); and compare Shaw v. President, etc., of Village of Sun Prairie, 74 Wis. 105, 42 N.W. 271 (1889).

Accordingly, we shall consider the propriety of the granting of directed verdicts in favor of both defendants upon the basis not only of the evidence admitted by the trial court, but in the light of Exhibit 14, which, in our view, is like the proverbial thousand words.

We first consider the claim against Salt River Valley Water Users' Association.

For the law, in the absence of pertinent Arizona authority, we look to the applicable principles stated in the Restatement. Section 363(2) of the Restatement (Second) of Torts states the following rule:

"(2) A possessor of land in an urban area is subject to liability to persons using a public highway for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway."

"Caveat:

"The Institute expresses no opinion as to whether the rule stated in Subsection

(2) may not apply to the possessor of land in a rural area."

In explaining the rule, the pertinent Comment states:

> · *"e. Trees.* The rule stated in Subsection (2) is an exception [to the principle of nonliability for harm caused by natural conditions] which has developed as to trees near a public highway. It requires no more than reasonable care on the part of the possessor of the land to prevent an unreasonable risk of harm to those in the highway, arising from the condition of the trees. In an urban area, where traffic is relatively frequent, land is less heavily wooded, and acreage is small, reasonable care for the protection of travelers on the highway may require the possessor to inspect all trees which may be in such dangerous condition as to endanger travelers. It will at least require him to take reasonable steps to prevent harm when he is in fact aware of the dangerous condition of the tree." Restatement (Second) of Torts § 363 Comment e, at 259.

■ The evidence did not disclose the owner of the land where the tree stood. In response to an interrogatory asking for the nature of Salt River's interest in the land, Salt River answered:

> "The interest of this defendant is by virtue of those contracts whereby the Salt River Valley Water Users' Association, as Trustee for the United States of America, operates and maintains the irrigation portion of the Salt River Project facilities and easements owned by the United States of America."

That answer was read into evidence. In addition, Salt River's superintendent of irrigation operations testified to the effect that the Association was concerned with the condition of the trees along the irrigation ditches and if a tree or limb fell, its construction and maintenance department would have equipment for its removal. We hold this evidence to be sufficient to establish a prima facie case as to Salt River's possession and control of this land insofar as this rule of liability is concerned.

■ Salt River argues that this land is not "urban" and hence this rule of liability does not apply. The locality where the accident occurred is difficult to categorically classify as rural or urban. Pictures in evidence show that, while there is a plowed field directly west of the ditch and trees, there is a substantial development of residential and commercial buildings covering the land on the east side of 67th Avenue. Another road intersects 67th Avenue nearly due east of the tree which fell. There are a number of parked vehicles portrayed in the photographs in evidence. Under this evidence, we believe it improper to rule as a matter of law that this is not an "urban" area.

■ Moreover, we consider that, although the basic reasoning underlying the rule of the Restatement is sound, the "urban" versus "rural" distinction suggested is too arbitrarily drawn to accurately reflect the results of the important decisions in this area of law. See generally McCleary, The Possessor's Responsibilities as to Trees, 29 Mo.L.Rev. 159 (1964). Cases which have denied liability on the basis of the character of the locality involve trees, often in forests, adjacent to remote, little-traveled roads, where the risk of harm is clearly outweighed by the burden of placing a duty to inspect on the owners of large tracts of land. See, e. g., O'Brien v. United States, 166 F.Supp. 231 (D.C.1958) aff'd, 275 F.2d 696 (9th Cir. 1960) ; and Lemon v. Edwards, 344 S.W. 2d 822 (Ky.1961). We approve those decisions. On the other hand, we see little reason why a possessor of land with a row of trees adjacent to a heavily traveled highway should be automatically relieved of liability merely because the locality is to be labeled as "rural," regardless of how great the risk and how small the effort needed to eliminate it. Where reasonable men can differ as to whether the risk is unreasonable in the light of the utility of the use being served by the risk, see

Restatement (Second) of Torts § 291, then the question of whether a possessor has exercised reasonable care should be left to a jury. We believe the broad mosaic painted by the reported cases in this area of our law supports this view. An illustrative case is Brandywine Hundred Realty Co. v. Cotillo, 55 F.2d 231 (3d Cir. 1931), in which the court affirmed a jury verdict for the plaintiff where a tree fell in a "suburban forest" some two miles from a city. We do not think that the character of this land was such that Salt River was entitled to a directed verdict on this basis.

■ Nor do we think that Salt River was entitled to prevail as a matter of law because of a lack of showing that it had notice that the tree in question was in a dangerous condition. Photographs show the effect of the flow of water in the irrigation ditch to undercut these trees and to deprive them of lateral support in the direction of the highway. Plaintiff testified that there were signs of burning and rot on the "log" found at the scene of this accident three weeks afterwards. Her description of its location and condition make it more probable than not that this "log" was the main trunk of the tree that hit her car. It is our view that her testimony, together with the photographic evidence, presented a sufficient showing to resist a motion for directed verdict under the quoted Restatement rule and decisions such as Brandywine Hundred Realty Co. v. Cotillo, supra; Hay v. Norwalk Lodge No. 730, B.P.O.E., 92 Ohio App. 14, 109 N.E.2d 481 (1951); and compare Caminer v. Northern & London Inv. Trust, Ltd., 2 KB 64, 11 A.L.R.2d 617 (English Ct.App. 1949).

Plaintiff has also alleged the maintenance of a nuisance and, on retrial, may press this theory again. Nuisance is a catch word, often seized upon as a "substitute for any analysis of a problem." Prosser, Torts § 87, at 592. A private nuisance relates to and is based upon a disturbance in rights in land and has no application in this case. A public nuisance is a "species of catch-all criminal offense, consisting of an interference with the rights of the community at large." Ibid. at 594. A "nuisance" often, though not always, involves "the idea of continuance or recurrence over a considerable period of time." Ibid. § 88, at 601.

■ The courts have generally been unwilling to characterize trees, particularly live trees, as nuisances. Caminer v. Northern & London Inv. Trust, Ltd., supra; Pietz v. City of Oskaloosa, 250 Iowa 374, 92 N.W.2d 577 (1958). In the absence of any evidence that this tree, or this row of trees, was obviously creating a hazard on this highway over a period of time, we are of the opinion that the allegations of nuisance were not sustained. Compare Coates v. Chinn, 51 Cal.2d 304, 332 P.2d 289 (1958).

As to Maricopa County's liability, plaintiff argues that the test for liability is essentially the same as for the defendant Salt River, and that the county is liable if it knew or should have known that the condition was such as to be dangerous to those using the public way. We do not believe the test is the same and are not persuaded that plaintiff's authorities are controlling on the facts of this case. The difference lies in the degree of control over the offending object.

Plaintiff relies upon such cases as Inabinett v. State Highway Department, 196 S.C. 117, 12 S.E.2d 848 (1941); Barron v. City of Natchez, 229 Miss. 276, 90 So. 2d 673 (1956); and New York cases which have held public authorities liable for injuries suffered by travelers from falling trees, the trunks of which were rooted outside of the street or highway right of way.

The *Inabinett* case concerned a tree which was within inches of the right of way. Its surface roots extended two feet into the right of way. There was testimony that the tree and its big dead limbs were leaning over the road. The court in affirming a judgment for the plaintiff stressed the proximity of the tree to the highway.

In the *Barron* case, the landowner on whose land the tree was located had notified the defendant city of the dangerous condition of the tree, which leaned over the right of way, and had asked the city to remove it. In Brown v. State, 2 Misc.2d 307, 58 N.Y.S.2d 691 (1945), and Fitzgerald v. State, 198 Misc. 39, 96 N.Y.S.2d 452 (1950), the trees substantially overhung the highway. In *Fitzgerald* the "branches reached entirely across the pavement."

In both *Inabinett* and *Barron,* the court cited and relied upon the Restatement (Second) of Torts § 202, at 375, which grants to public authorities a privilege to go upon private land to abate a public nuisance. But the privilege exists " * * * only if in fact a public nuisance exists." See § 202, Comment *e,* and the illustration thereunder. While this section gives public authorities a privilege to abate what is in fact a public nuisance on private land, it creates no duty to do so. And here, as we have seen, there was no evidentiary showing of a nuisance.

■ In the case at bar, there is no evidence that the trunk of the tree leaned over the right of way. The only testimony on the subject was given by a county employee, who testified that he did not recall that there were any branches overhanging the traveled portion of the road. A map in evidence showed the trunk of the tree to be some 30 feet away from the pavement. While the county might have had the right to cut off limbs which overhung the public right of way, see Annots., 18 A.L.R. 655, 76 A.L.R. 1111, 1112, 128 A.L.R. 1221, plaintiff's injuries here were the result of the falling of the entire tree, not its limbs apart from the tree. The tree did not constitute a nuisance, chargeable to the county, at any time prior to its fall, when it became an obstruction to travel. See A.R.S. § 18–160, and Wershba v. City of Lynn, 324 Mass. 327, 86 N.E.2d 511, 14 A.L.R.2d 179 (1949). We are unwilling to so extend the county's duties with respect to maintenance of its many

highways to a degree that could render it liable under the limited evidence presented here. The trial judge properly granted a directed verdict in favor of the county.

Accordingly, the judgment rendered below as to the defendant Maricopa County is affirmed, and that rendered in favor of Salt River Valley Water Users' Association is reversed and this cause remanded for new trial.

HATHAWAY, C. J., and KRUCKER, J., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120, subsec. E.