709 S.E.2d 79

**William D. CURTIS, Respondent,**

v.

**Sandra Morris BLAKE, as Personal Representative of the Estate of Brandon T. Blake, Appellant.**

No. 4792.

Court of Appeals of South Carolina.

Heard Sept. 15, 2010.

Decided Feb. 16, 2011.

Rehearing Denied April 22, 2011.

Thomas J. Keaveny, II, and Amy Rothschild, both of Charleston, for Appellant.

C. Bradley Hutto, of Orangeburg; Mark A. Tinsley, of Allendale; and Robert Norris Hill, of Newberry, for Respondent.

THOMAS, J.

In this personal injury action, Sandra Morris Blake, as personal representative of the estate of Brandon T. Blake, appeals the amount of damages awarded to William D. Curtis.[1] We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 25, 2003, a pickup truck driven by Brandon Blake struck an empty log trailer that was being pulled by a tractor-trailer operated by Curtis. Blake had disregarded a stop sign and entered the intersection where the collision occurred. After the impact, Curtis maneuvered his vehicle to the side of the road.

Curtis did not request medical attention either at the accident scene or any time later that day, stating he only felt nervous and anxious. Although his neck and back were hurting and he felt stiff the morning after the accident, he still declined to seek treatment. He took Tylenol for his pain and continued to work as a truck driver. It was not until one month after the accident, and only at his wife's insistence, that Curtis went to a hospital emergency room for treatment.

---

1. Blake died on August 21, 2006, while this appeal was pending. On August 27, 2009, this court issued an order authorizing the substitution of the personal representative of his estate as the appellant in this matter. For ease of reference, the name "Blake" will refer interchangeably to either Blake, the personal representative, or to both parties collectively.

The emergency room physician gave Curtis prescriptions for Ibuprofen and a muscle relaxer and then discharged him. Curtis did not take the prescribed medications because he was advised they could make him sleepy, which would interfere with his employment as a truck driver. Instead, he continued to take Tylenol for his pain.

A few weeks after visiting the emergency room, Curtis consulted Dr. Campbell, a chiropractor. Dr. Campbell diagnosed Curtis with a lumbosacral sprain and cervical sprain with disk involvement. He treated Curtis with physical therapy involving electrical stimulation, heat, and chiropractic manipulation adjustments. On May 14, 2003, after four treatments, Dr. Campbell released Curtis.

On November 19, 2003, about six months after his discharge from Dr. Campbell, Curtis saw Dr. Nivens, a physician specializing in spinal medicine, seeking treatment for neck and low back pain. Dr. Nivens' evaluation showed Curtis had pain in his neck, tenderness in the musculature of his neck and shoulder girdle, and tenderness or pain in his lumbar spine. A subsequent MRI showed Curtis exhibited three levels of disk protrusion in the cervical spine (i.e. the neck). Dr. Nivens prescribed Naprosyn, an anti-inflammatory medicine, and a steroid treatment, which Curtis admitted helped with the pain he was experiencing.

Dr. Nivens released Curtis in January 2004, after Curtis indicated the pain had essentially gone away. Curtis was to consult Dr. Nivens only on an "as needed basis." In April 2005, after Curtis had filed this action, Dr. Nivens saw him again. During that visit, Curtis indicated he was still having pain, for which Dr. Nivens suggested a nonprescription pain reliever. Dr. Nivens then gave Curtis a "spur-of-the-moment" impairment rating of "somewhere around 10 percent for the neck and low back, the whole body essentially."

On February 17, 2004, Curtis sued Blake seeking actual and punitive damages for Blake's alleged negligence in causing the collision. Initially, Blake denied the allegations of negligence and asserted several affirmative defenses, including failure to mitigate damages and sudden emergency.

The parties pursued discovery, and the matter came for a jury trial on October 31, 2005. After the jury was seated but

before the testimony began, the trial judge announced Blake admitted he was negligent and his negligence caused the accident. The jury therefore had to determine only whether Curtis sustained injuries or losses that were proximately caused by the accident and his monetary damages.

Presentation of the evidence began at 1:50 p.m. Curtis presented (1) the deposition testimony of Dr. Campbell, which was read by counsel; (2) the video deposition of Dr. Nivens; (3) live testimony from Michele Curtis, Curtis's wife; and (4) Curtis's own testimony. Blake did not introduce any evidence.

The jury began deliberating at 5:15 p.m. Around 5:40 p.m., the jury returned to the courtroom with a verdict. After the trial judge allowed publication of the verdict, the clerk announced that the jury awarded Curtis actual damages of $450,000.00. At the request of Blake's attorney, the clerk polled the jurors, all of whom confirmed the verdict. Blake unsuccessfully moved for a new trial absolute, a new trial based on the thirteenth juror doctrine, or in the alternative, a new trial *nisi* remittitur and then filed this appeal.[2]

## ISSUES

I. Was Blake entitled to a new trial absolute or a new trial *nisi* remittitur because (1) the verdict amount was roughly one hundred times Curtis's proven actual damages or (2) the verdict resulted from passion, prejudice, bias, or other consideration not based on the evidence?

II. Did the trial judge improperly permit Curtis's wife to testify when she was disclosed as a witness only one week before trial?

III. Was Blake entitled to a new trial because of the brevity of the jury's deliberation?

---

**2.** This court initially dismissed Blake's appeal, ruling that his new trial motion was untimely and therefore did not stay his time for appeal; however, the Supreme Court, in a published opinion, reversed the dismissal and held Blake's motion was timely because it was " 'made' when it was placed in the mail for service on opposing counsel.' " *Curtis v. Blake*, 381 S.C. 189, 191, 672 S.E.2d 576, 577 (2009). Based on this holding, the Court reinstated Blake's appeal and remanded the matter to this court for a decision on the merits. *Id.* at 192, 672 S.E.2d at 578.

IV. Should the trial judge have granted a new trial pursuant to the thirteenth juror doctrine?

## STANDARD OF REVIEW

"A motion for a new trial nisi remittitur asks the trial court to reduce the verdict because the verdict is merely excessive." *James v. Horace Mann Ins. Co.*, 371 S.C. 187, 193, 638 S.E.2d 667, 670 (2006). "The denial of a motion for a new trial nisi is within the trial court's discretion and will not be reversed on appeal absent an abuse of discretion." *Id.* "If the amount of the verdict is grossly inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial court must grant a new trial absolute." *Id. See also Sanders v. Prince*, 304 S.C. 236, 238, 403 S.E.2d 640, 642 (1991) ("When a verdict is 'grossly excessive and the amount awarded is so shockingly disproportionate to the injuries as to indicate that the jury acted out of passion, caprice, prejudice, or other consideration not founded on the evidence, it becomes the duty of this Court, as well as the trial court, to set aside the verdict.' ") (quoting *Small v. Springs Indus.*, 292 S.C. 481, 487, 357 S.E.2d 452, 455 (1987)).

" '[T]he exclusion of a witness whose name is not given in answer to an interrogatory calling for it is but one of the discretionary powers committed to a trial judge for the proper conduct of litigation.' " *Laney v. Hefley*, 262 S.C. 54, 59, 202 S.E.2d 12, 14 (1974) (quoting *Wright v. Royse*, 43 Ill.App.2d 267, 193 N.E.2d 340, 350 (1963)).

"A trial judge's order granting or denying a new trial upon the facts will not be disturbed unless his decision is wholly unsupported by the evidence, or the conclusion was controlled by an error of law." *Folkens v. Hunt*, 300 S.C. 251, 254–55, 387 S.E.2d 265, 267 (1990). "[T]o reverse the denial of a new trial motion under [the thirteenth juror doctrine,] we must, in essence, conclude that the moving party was entitled to a directed verdict at trial." *Parker v. Evening Post Publ'g Co.*, 317 S.C. 236, 247, 452 S.E.2d 640, 646 (Ct.App.1994).

## LAW/ANALYSIS

### I. New trial absolute and new trial nisi remittitur

■ Blake advances numerous reasons to support his argument that he was entitled to a new trial absolute or a new trial nisi remittitur because the evidence presented at trial did not support the amount of damages the jury awarded Curtis. These reasons include (1) Curtis's total medical expenses were only $4,530.98, of which $2,830.00 involved the MRI and its interpretation; (2) Curtis lost only $2,615.76 in wages as a result of the accident; (3) Curtis did not receive medical treatment at the scene of the accident and delayed treatment until more than one month after the accident; (4) Curtis was still able to work after the accident; (5) Curtis did not take his prescribed medications; and (6) Curtis's treating doctors believed he had recovered from his pain. Blake also points out the award of $450,000.00 is almost one hundred times the cost of Curtis's medical treatment and his lost wages.

In view of all the evidence presented, however, we hold the circumstances cited by Blake do not constitute "compelling reasons" that would warrant the grant of a new trial nisi remittitur. *See Proctor v. Dep't of Health & Envtl. Control*, 368 S.C. 279, 320, 628 S.E.2d 496, 518 (Ct.App.2006) (stating "compelling reasons must be given to justify invading the jury's province by granting a new trial *nisi remittitur*" and noting "[t]he consideration for a motion for a new trial *nisi remittitur* requires the trial judge to consider the adequacy of the verdict in light of the evidence presented").

Blake's arguments appear to disregard Curtis's explanation for his behavior after the accident and his evidence of nonmonetary damages in addition to lost wages and medical bills. Dr. Campbell diagnosed Curtis with a lumbosacral sprain and cervical sprain with disc involvement. The MRI showed three separate disc protrusions in Curtis's cervical spine and a fourth disc protrusion in his lower back. According to Dr. Nivens, the disc protrusions were permanent injuries directly related to the accident. Dr. Nivens also stated Curtis showed signs of degenerative disk disease that were most likely associated with the disk protrusions rather than age, given that Curtis was only thirty-one years old at the time of the accident.

Curtis told Dr. Campbell he was no longer in pain, but explained at trial that the chiropractic treatments were not helping him and he was concerned about the expense. Similarly, Curtis ended his treatment with Dr. Nivens even though he continued to have problems because he believed Dr. Nivens was unable to do anything for his pain. Both Curtis and his wife testified that he continued to work as a truck driver because his family needed the income and he had no experience in any other line of work. Furthermore, until the accident, Curtis never had neck or back problems.

Curtis also testified at length about the pain and suffering that he experienced since the accident. In addition to pain in his neck and back, which he experienced on a daily basis, he had difficulty sleeping, was unable to enjoy interacting with his family as he did previously, and would become irritable with his young children. He also suffered from paranoia while driving whenever he encountered a vehicle approaching a traffic light or stop sign. His pain prevented him from lifting things, working on cars, and riding a bicycle as he could before the accident. Curtis's "loss of enjoyment of life" was a "compensable element, separate and apart from pain and suffering, of a damages award." *Boan v. Blackwell*, 343 S.C. 498, 501, 541 S.E.2d 242, 244 (2001). *See id.* at 502, 541 S.E.2d at 244 ("[D]amages for 'loss of enjoyment of life,' compensate for the limitations, resulting from the defendant's negligence, on the injured person's ability to participate in and derive pleasure from the normal activities of daily life, or for the individual's inability to pursue his talents, recreational interests, hobbies, or avocations.").

We therefore hold that in view of all the evidence presented at trial, Blake failed to show compelling reasons that would justify the reduction of the damages award by the trial judge. Likewise, we hold the trial judge's denial of a new trial absolute was supported by the evidence and not controlled by an error of law. *See Manios v. Nelson, Mullins, Riley & Scarborough*, 389 S.C. 126, 141–42, 697 S.E.2d 644, 652 (Ct. App.2010) ("The grant or denial of new trial motions rests within the discretion of the trial court and its decision will not be disturbed on appeal unless the findings are wholly unsupported by the evidence or the conclusions reached are controlled by error of law.").

## II. Testimony of Curtis's wife

Blake next argues the trial judge should have prevented Curtis's wife from testifying at trial because she was not disclosed as a witness until one week before the hearing. He further contends the manner in which she presented her testimony was unduly prejudicial and merely cumulative to Curtis's own testimony. We reject these arguments.

" '[T]he sanction of exclusion of a witness should never be lightly invoked. . . . The precise nature of the interrogatories and discovery posture of the case, willfulness and the degree of prejudice are some of the important factors.' " *Laney,* 262 S.C. at 60, 202 S.E.2d at 14–15 (quoting *Carver v. Salt River Valley Water Users' Ass'n,* 8 Ariz.App. 386, 446 P.2d 492, 496 (1968)).[3] Here, Blake's appellant's brief acknowledges an expectation that Curtis would call his wife to testify on his behalf. Furthermore, Blake could have but did not move for a continuance to depose Mrs. Curtis before she testified. *See Jackson v. H & S Oil Co.,* 263 S.C. 407, 411–12, 211 S.E.2d 223, 225 (1975) (noting that the appellant, who objected to a witness who was not disclosed until the morning of trial could have, among other things, requested a delay or continuance to examine the witness).

We decline to address Blake's arguments that Mrs. Curtis's testimony was inflammatory and cumulative. Blake made no objections while Mrs. Curtis was on the stand; therefore, his arguments on appeal about the inflammatory and cumulative nature of her testimony are not preserved for appellate review. *See Cogdill v. Watson,* 289 S.C. 531, 537, 347 S.E.2d 126, 130 (Ct.App.1986) ("The failure to make an objection at the time evidence is offered constitutes a waiver of the right to object.") *(quoted in Austin v. Stokes–Craven Holding Corp.,* 387 S.C. 22, 39, 691 S.E.2d 135, 144 (2010)).

## III. Length of jury deliberations

Blake next argues the amount of time the jury took to return a verdict warrants the grant of a new trial. He alleges that the jurors either had already made up their minds before

---

**3.** *Carver* was later vacated by the Arizona Supreme Court on other grounds. 104 Ariz. 513, 456 P.2d 371 (1969).

entering the jury room or were more concerned with reaching a decision as soon as possible because they were deliberating on Halloween night and many of them had children who would be awaiting their return. We disagree.

Regarding the question of whether a short jury deliberation calls for the grant of a new trial, this court has stated

A spate of juridical writings confirms the strict parameters placed upon courts attempting to police jury deliberations based upon a timekeeper mentality. Despite the discretion given a judge by the thirteenth juror doctrine, it does not allow the court to overstep these boundaries *in toto.* Additionally, granting a new trial due to suspicions of deliberation quality is a flagrant deviation from premising a new trial upon the facts.

*Youmans v. S.C. Dep't of Transp.,* 380 S.C. 263, 282, 670 S.E.2d 1, 10 (Ct.App.2008), *cert. dismissed as improvidently granted,* 386 S.C. 640, 690 S.E.2d 582 (2010). This court further stated: "The thirteenth juror doctrine entitles a trial court to act as a thirteenth juror *when it finds the evidence does not justify the verdict* and it may then grant a new trial *based solely on the facts." Id.* at 287, 670 S.E.2d at 13 (emphasis added).

In *Youmans,* this court held that brief jury deliberations alone would not be a sufficient basis for the grant of a new trial. Although recognizing the discretion accorded to a trial court by the thirteenth juror doctrine, the court referenced a "general rule" that "the shortness of time taken by a jury in reaching its verdict has no effect upon the validity of the verdict." *Id.* at 282, 670 S.E.2d at 11 (quoting 89 C.J.S. *Trial* § 792 (2001)). This court also quoted from *Thomas v. Atlantic Coast Line Railroad Co.,* 221 S.C. 462, 471–72, 71 S.E.2d 403, 407 (1952), in which the Supreme Court stated that "[w]hile it was unusual for the jury to arrive at its verdict in so short a time, we would not be justified in concluding therefrom that the jury acted capriciously or that it was [actuated] by passion or prejudice." *Youmans,* 380 S.C. at 283, 670 S.E.2d at 11.

We have determined that the evidence supports the damages award. Based on this determination, we further hold the

brevity of the jury deliberations alone does not suffice as a reason to set aside the verdict and remand for a new trial.

As to the concern that some of the jurors may have been eager to conclude deliberations because of Halloween plans, we note the trial judge gave the jury the option of returning the following day to deliberate, which the jurors collectively declined. Furthermore, with the consent of both parties, the trial judge informed the jurors that they would not have to return the following day if they reached a verdict that evening. Finally, we note that Blake presented no evidence that any of the jurors were motivated by improper considerations to reach a hasty decision in the matter. *See Bratton v. Lowry,* 39 S.C. 383, 387–88, 17 S.E. 832, 834 (1893) (holding the allegation that the verdict was "hastened by an alarm of fire in the town" did not warrant the grant of a new trial absent an objection from any member of the jury panel before the verdict was published); *Parker,* 317 S.C. at 247 n. 7, 452 S.E.2d at 647 n. 7 (Ct.App.1994) (holding the appellant's argument "that the jury did not give due and serious consideration to the case" because it ended deliberations one-half hour before the NCAA basketball tournament was to begin on television was "rank speculation without any evidentiary support" and "manifestly without merit").

IV. New trial based on the thirteenth juror doctrine

■ Finally, Blake contends the trial judge should have granted a new trial pursuant to the thirteenth juror doctrine based on Curtis's failure to present substantial evidence of disfigurement, death, permanent injuries, debilitating injuries, inability to work, loss of wages and future income, or significant medical expenses. We find no abuse of discretion in the trial judge's decision to deny a new trial.

■ "The thirteenth juror doctrine is a vehicle by which the trial court may grant a new trial absolute when he finds that the evidence does not justify the verdict." *Folkens,* 300 S.C. at 254, 387 S.E.2d at 267. "As the thirteenth juror, the trial judge can hang the jury by refusing to agree to the jury's otherwise unanimous verdict." *Lane v. Gilbert Constr. Co.,* 383 S.C. 590, 597, 681 S.E.2d 879, 883 (2009). Review by an appellate court of the grant or denial of a new trial is

"limited to consideration of whether evidence exists to support the trial court's order." *Id.*

Based on this narrow scope of review and our determination that evidence supports the jury's decision, we hold the trial judge acted within his discretion in refusing to grant a new trial under the thirteenth juror doctrine.

## CONCLUSION

We agree with the trial judge that the verdict in this case was supported by the evidence presented at trial. We further hold the trial judge committed no reversible error in allowing Curtis's wife to testify. Based on our determination that the evidence supported the amount of damages awarded, we hold the trial judge properly determined the brevity of the jury deliberations did not warrant a new trial and acted within his discretion in denying a new trial under the thirteenth juror doctrine.

**AFFIRMED.**

FEW, C.J., and LOCKEMY, J., concur.