**David and Barbara WILL, Individually, and as Parents and Natural Guardians of Paige Will, an infant, Plaintiffs,**

**v.**

**RICHARDSON–MERRELL, INC., a Delaware Corporation, Defendant.**

No. CV484–118.

United States District Court, S.D. Georgia, Savannah Division.

Aug. 18, 1986.

Thomas R. Taggart, Savannah, Ga., Barry Nace, Washington, D.C., for plaintiffs.

Frank C. Woodside, III and Janet G. Abaray, Dinsmore & Shohl, Cincinnati, Ohio and Ben L. Weinberg, Jr. and Marvin A. Devlin of Long, Weinberg, Ansley & Wheeler, Atlanta, Ga., for defendant.

## ORDER

EDENFIELD, District Judge.

Before the Court is plaintiffs' motion for a new trial or judgment notwithstanding the verdict ("JNOV"). Defendant opposes that motion.

### I. *Background*

Paige Will was born with a birth defect. Each of the fingers and the thumb on her left hand is deficient. She is otherwise normal. Paige and her parents brought this action against Merrell-Dow contending that plaintiff's birth defect was caused by Mrs. Will's ingestion of Bendectin during a crucial period of Paige Will's gestation. Plaintiffs' claims were brought under theories of negligence and strict liability.

Defendant steadfastly denied that Bendectin was the cause of Paige's defect. In its defense, defendant maintained that Bendectin does not cause birth defects, that Paige Will's problem was genetic and alternatively, even if it could be shown that Bendectin causes defects, Mrs. Will did not ingest Bendectin during the crucial period of gestation. The crucial period in this case would have been early in the pregnancy during limb formation.

During an eight day trial, the Court heard extensive testimony regarding numerous studies in which researchers have considered the teratogenicity of Bendectin. At the conclusion of the trial, the jury deliberated approximately an hour and then returned a verdict for the defendant Merrell-Dow. Plaintiffs now file a motion for JNOV or new trial. In it they allege numerous errors. Those which merit discussion will be addressed below.

### 1. *FDA Minutes*

Plaintiff first contends that this Court erred in admitting into evidence plaintiffs' Exhibit 1223 which consists of certain FDA Advisory Committee Minutes.

At the outset the Court notes that at least three extensive conferences were held to resolve discovery disputes between these parties. For the most part, the parties reached certain agreements and settled the disputes among themselves. As the transcripts of those conferences will reveal, the Court was asked to rule on very few objections. Plaintiffs' first objection goes to a matter which the parties resolved among themselves. As defendant notes in its brief, the following exchange took place at the pre-trial conference:

> MR. NACE: This is a letter that was sent by a doctor at the FDA to the company. Am I correct on that? So we know we're on the same wave length.
>
> The FDA sent to the company, they have it. And this FDA doctor was being critical of the way the animal studies were reported. Then Dr. Gibson explains why she is wrong.
>
> MR. WOODSIDE: Can I make a colloquy and observation? It may well be that we resolved this type of question before. It's my understanding that matters like this could come in because we also then could get into other FDA matters; goosey-gander rule.
>
> MR. NACE: If relevant.
>
> MR. WOODSIDE: If relevant, yes.
>
> MR. NACE: There's no question of hearsay, you know.

> MR. WOODSIDE: I think that was our understanding this morning.
>
> THE COURT: Yes.
>
> MR. NACE: If it's just hearsay, I agree, there should [not] be any objection.

Transcript of June 2, 1986 Pretrial, pp. 186–187.

■ Because the parties reached an agreement among themselves on the issue of the FDA Advisory Committee Hearings, the Court did not err in admitting them at trial.

### 2. *Denial of Right to Present Rebuttal Witness*

Although defendant had originally planned to conclude its case on Wednesday, June 24, it concluded its case on Tuesday morning at approximately 10:30. The Court inquired as to the length of plaintiffs' rebuttal testimony. Plaintiffs' attorney, Mr. Barry Nace, stated that he had a witness who was scheduled to come from California, a Dr. Alan Garfinkle, the following day. When the Court expressed its displeasure with delaying the trial, defense counsel noted that Nace had the witness's deposition testimony. Nace admitted he had deposition testimony, but requested additional time to prepare his presentation. Accordingly, the Court gave the parties the opportunity to reorganize and Mr. Nace the opportunity to consider his strategy and the manner in which he chose to proceed.

The Court met with the attorneys two hours later and in response to an inquiry from the Court regarding plaintiffs' expectations, Nace stated:

> I think I'll make the Court very happy with what I'm going to say. We are not going to enter any testimony. We have two exhibits that we wish to put in rebuttal.

■ The fact that Nace made no attempt to even introduce the deposition testimony of Garfinkle suggests that Nace reconsidered his position and decided it was not as important as he might now suggest. Further, plaintiffs cannot now argue that they

would have been prejudiced in not having the live witness in light of the fact that plaintiffs presented approximately 75% of their case by way of deposition testimony.

Finally, "[u]nder Fed.R.Evid. 403 the trial judge has broad discretion to exclude evidence in order to prevent needless presentation of cumulative evidence." *Hopkins v. Britton,* 742 F.2d 1308, 1311 (11th Cir. 1984). Overall, plaintiffs submitted a great deal of cumulative evidence and there is no indication that Garfinkle's testimony would not have been more of the same. Accordingly, plaintiffs' contention is without merit.

### 3. *Jury Instructions*

Plaintiffs contend this Court's instruction on the burden of proof was error. Plaintiffs object to the following instruction given by the Court:

> The defendant does not have the burden of proof in this case. That means that the defendant does not have to prove that Paige Will's birth defects were caused by something other than Bendectin, nor does defendant have to offer any proof as to the cause of Paige Will's birth defects. Nevertheless, the defendant has offered evidence that Paige Will's birth defects were the result of a genetic condition. If you find that Paige Will's birth defects were caused by a genetic condition, or that it is just as probable that her birth defects were caused by genetic factors as by Bendectin, your deliberations must cease and your verdict must be for the defendant. If, however, you conclude under the theory of negligence or strict liability that Bendectin was more likely than not the cause of Paige Will's birth defect, then your verdict is for the plaintiffs and you must go on and consider the issue of damages.

Plaintiffs maintained at trial and continue to insist in their brief that under the above-noted instruction, plaintiffs had to prove that more likely or not Bendectin caused plaintiff's birth defect, while defendants were held to a lesser standard in proving that it was a genetic defect. Plaintiffs misconstrue the instruction.

Defendant did not set out to *prove* Paige Will's birth defect was, in fact, a genetic defect. Plaintiff had the burden to show that, more likely than not, Paige Will's defect was caused by her mother's ingestion of Bendectin. The instruction is an illustration of the quantum of proof sufficient to satisfy a verdict. Thus, if the jury found that it was just as probable that Paige's defect was caused by a genetic defect as by Bendectin, then it follows that plaintiffs have not shown, by a preponderance of the evidence, that Bendectin caused the defect. Of course, nor does it mean that defendant showed Paige had a genetic birth defect. It simply means that plaintiffs did not produce sufficient proof to tip the scale in their favor.

Although plaintiffs correctly assert that a defendant has the burden to plead and prove any affirmative defense, this simply was not an affirmative defense. An affirmative defense is established only when a defendant *admits the essential facts* of a complaint and sets up other facts in justification or avoidance. *Metropolitan Publishers Representations, Inc. v. Arnsdorff,* 153 Ga.App. 877, 267 S.E.2d 260 (1980). Here the essential facts were in dispute. Accordingly, plaintiffs' objection must fail.

### 4. *Testimony of Dr. Norman Cowen*

Plaintiffs also contend that this Court erred in excluding the opinion testimony of Dr. Norman Cowen. The relevant Federal Rules of Evidence provide as follows:

*Rule 702. Testimony by Experts*

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Rule 703. Bases of Opinion Testimony by Experts*

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Although an expert witness's opinion testimony does not have to be based upon admissible evidence, such opinions must be based upon " 'facts or data ... of a type reasonably relied upon by experts in the particular field....' " *American Key Corp. v. Cole Nat. Corp.*, 762 F.2d 1569, 1580 (11th Cir.1985). "An expert's opinion that lacks any credible support does not create an issue of fact. *Id.* Crucial factors with respect to admissibility of 'expert' testimony are the actual experience of the witness and the probative value of his opinion. *Hughes v. Hemingway*, 539 F.Supp. 130, 132 (E.D.Pa 1982). The qualification of an expert '[i]s a matter peculiarly within the discretion of the trial judge.' " *Id.*

■ The Court did not err in excluding Cowen's testimony. First, Cowen himself admitted that he is not an expert regarding Bendectin's teratogenicity as evidenced by the following excerpts from his deposition:

My opinion is that in the absence of any other cause, known cause, for [the plaintiff's] problem and her [mother's] taking this drug Bendectin during the first trimester for nausea and vomiting—and even though counsel is right, *I'm not an expert* in these matters, but the drug has been shown to cause some changes in the limbs of experimental animals—I would have to say that *this probably caused the problem* in Paige Will.

Cowen Depo. of 12/27/85 at 59. (Emphasis added).

It would seem logical to me that in the absence of other causes, but in the presence of ingestion of a known teratologic drug, that this would be the cause. *That is with no expertise,* just as a normal physician, I can say that.

Cowen Depo. of 12/27/85 at 60. (Emphasis added).

In the absence of these other causes, if indeed this Bendectin has some effect on experimental animals, on the limbs of them, and if this mother took that drug, *it would seem to me* to follow that in Paige's case, that the drug that [her mother] took at that important time of development caused her problem.

Cowen Depo. of 12/27/85 at 70. (Emphasis added).

Moreover, when asked whether he had any knowledge of the studies conducted regarding Bendectin, Cowen admitted he had none.

Q. Are you familiar with the state of the scientific literature on Bendectin at any particular time?

A. Not really, really.

Cowen Depo. of 12/14/8t at 114.

 * * * * * *

Q. ... With what literature concerning Bendectin are you generally familiar?

A. The Washington Post, Time magazine.

*Id.* at 35.

Q. Now, sir, you have not reviewed the epidemiological studies published in the medical and scientific literature on Bendectin, have you?

A. That's correct, I haven't.

Cowen Depo. of 12/27/85 at 83.

 * * * * * *

Q. And you have not reviewed in detail any animal studies dealing with Bendectin or its components, have you?

A. I've been shown a few.

Q. By Mr. Nace:

A. Yes.

Q. Have you reviewed those studies in detail?

A. No

*Id.* at 75.

In short, Dr. Cowen was a plastic surgeon with relatively little, if any, scientific knowledge regarding Bendectin, its compo-

nents or its effects. It was conceded that there is no visible distinction between the characteristics of a drug-related defect and a genetic defect. The Court properly excluded Dr. Cowen's opinion regarding the causation issue. *Accord, Perkins v. Volkswagen of America,* 596 F.2d 681, 682 (5th Cir.1979) (Where witness was a specialist in mechanical engineering with no experience in designing entire automobiles, trial court's decision not to allow him to testify as an expert in automotive design was not error).

### 5. *Court Instruction Regarding FDA Approval of Bendectin*

Plaintiffs contend, "[t]he instruction given by the Court was factually and legally incorrect. There was absolutely no evidence whatsoever on the 'fact' that the FDA 'conducted an investigation as to the safety of Bendectin and continued to approve of its use and sale.'" Plaintiffs' Motion for a New Trial or Judgment Notwithstanding the Verdict at 31.

It is readily apparent that plaintiffs are attacking an instruction which the defendant requested, but which the Court did not give. The instruction given by the Court provides:

> In considering whether Merrell Down complied with industry standards and exercised due care in the manufacturing, testing and sale of Bendectin, you may consider the fact that the FDA authorized its manufacture and distribution.

There is absolutely no mention of "investigations" conducted by the FDA. Thus, plaintiffs' objection is without merit.

### 6. *Warnings in PDR*

As evidence of the proper standard of care, during rebuttal plaintiffs sought to introduce the PDR description of a totally unrelated drug known as Nicolex. The PDR description contained reference to the fact that no animal reproductive or teratology studies had been performed on the drug, and therefore recommended caution in use during pregnancy. Plaintiffs maintain that Merrell's standard of care in connection with Nicolex sets the standard of care it should employ with respect to all the drugs it manufactures.

■ During trial there was absolutely no evidence regarding the drug Nicolex. In absence of any information regarding the characteristics of Nicolex, plaintiffs cannot maintain that simply because Merrell exercises a certain standard of care with respect to it, it should thereby exercise the same standard with every other drug it produces. This Court is given broad discretion to allow or exclude rebuttal evidence. *United States v. Haimowitz,* 706 F.2d 1549, 1560 (11th Cir.1983), *cert. denied,* 464 U.S. 1069, 104 S.Ct. 974, 79 L.Ed.2d 212 (1984). This Court properly excluded plaintiffs' proffer of the PDR reference to Nicolex.

### 7. *Brevity of Jury Deliberation*

■ Plaintiffs also contend that in light of the extensive evidence and testimony submitted at trial, the brevity of the jury deliberations suggests that the jury clearly did not consider all the evidence. Generally, a short period of deliberation by a jury before returning a verdict does not establish the proposition that the jury did not properly perform its duty. To prevail, plaintiffs must show something more than the mere fact that deliberations were short. *Segars v. Atlantic Coast Line Railroad Company,* 286 F.2d 767, 770–771 (4th Cir. 1961); *Shushereba v. R.B. Industries, Inc.,* 104 F.R.D. 524 (W.D.Pa.1985). In the instant case, plaintiffs have failed to do so.

### 8. *Great Weight of the Evidence*

Finally, plaintiffs contend that because the great weight of the evidence was "clearly" in favor of the plaintiffs, plaintiffs are entitled to a JNOV or a new trial.

Motions for judgment notwithstanding the verdict "must be granted cautiously and sparingly, and are appropriate in very limited circumstances. Full respect must be given to the jury's findings and the judge must be careful not to usurp the prime function of the jury as trier of facts." 28 Fed.Proc.L.Ed. § 62:692 (1984).

[T]he Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.

*Williams v. City of Valdosta,* 689 F.2d 964, 970 (11th Cir.1982), quoting *Boeing v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969).

 A motion for new trial, however, involves a different standard of consideration.

A trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury was contrary to the great weight of the evidence. Although a trial judge cannot weight the evidence when confronted with a motion for [JNOV], in a motion for new trial the judge is free to weight the evidence. *Rabun v. Kimberly-Clark Corp.,* 678 F.2d 1053, 1060 (11th Cir.1982) citing *King v. Exxon Corp.,* 618 F.2d 1111, 1115 (5th Cir.1980). The trial court, however, must find the verdict contrary to the great, and not merely the greater, weight of the evidence. [cits omitted]. Finally, when independently reviewing the evidence, the trial court is to view not only that evidence favoring the jury verdict but evidence in favor of the moving party as well. *See Rabun v. Kimberly-Clark Corp.,* 678 F.2d at 1060.

*Williams, supra,* at 973 (footnote omitted); *Jackson v. Magnolia Brokerage Co.,* 742 F.2d 1305 (11th Cir.1984); *see also* 28 Fed. Proc.L.Ed. § 62:707 (1984). Even within these parameters, however, a trial court's discretion to set aside a jury verdict and order a new trial based on the great weight of the evidence is very narrow. *Hewitt v. B.F. Goodrich Co.,* 732 F.2d 1554 (11th Cir.1984), *reh'g denied,* 739 F.2d 636 (11th Cir.1984). While the Court may reexamine the evidence, it is not free to reweigh it and set aside a jury verdict merely because the

jury could have drawn different inferences or conclusions or because the Court may feel that other results are more reasonable. *Litman v. Massachusetts Mut. Life Ins. Co.,* 739 F.2d 1549, 1557 (11th Cir.1984), *reh'g denied, en banc,* 746 F.2d 815 (11th Cir.1984). In addition, "the trial judge should not substitute his own credibility choices and inferences for the reasonable credibility choices and inferences made by the jury." *Williams,* at 973 n. 7. Finally, the burden of proving the propriety of a new trial is on the moving party. *Kehm v. Proctor & Gamble,* 580 F.Supp. 890, 896 (N.D. Iowa 1982), *aff'd,* 724 F.2d 613 (8th Cir.1983).

In support of their JNOV motion, plaintiffs reason that Flannery testified that of the 3 to 4% of children born with birth defects, half of the defects are due to genetic defects, the other half to exogenous substances. Dr. Flannery excluded all genetic defects except "Brachydactyly B." He conceded that if it was not Brachydactyly B that caused Paige Will's defect it would have to be an exogenous substance. Plaintiffs conclude that because Flannery's testimony regarding the genetic issue was so weak, no reasonable person could base their conclusion on Flannery's opinion. Thus, an exogenous substance must have caused plaintiff's defect. The only exogenous substance ingested was Bendectin. Because all experts ruled out all other ingested exogenous substances as causing the birth defects, the overwhelming evidence points to Bendectin. No witness testified that Bendectin was incapable of causing the defect and thus, plaintiffs conclude, this Court should issue a JNOV in their favor.

 This Court disagrees. Defendants did not have the burden of showing that Bendectin did not cause the defect, rather plaintiffs had the burden of showing that Bendectin is capable of causing birth defects and that it caused Paige Will's defect. In this case, there was a considerable issue regarding Bendectin's teratogenicity. In addition, there was extensive, conflicting testimony regarding the validity of studies

performed. The absence of human studies suggesting that Bendectin is a teratogen, raised a significant issue as to whether Bendectin is capable of causing defects in humans. Thus, even if each element of plaintiffs' reasoning is correct, without more, it does not support a motion for JNOV. In this case, the facts and inferences do not point so strongly in favor of plaintiffs so as to justify a conclusion that reasonable men could not differ.

At the outset of their motion, plaintiffs maintain that the great weight of the evidence was clearly in favor of and, as a result, plaintiffs are entitled to a new trial. As noted above, plaintiffs have the burden of proving this claim. Plaintiffs have failed to meet that burden. They simply have failed to make any argument suggesting that the great weight of the evidence showed that Bendectin caused plaintiff's defect.

Finally, the Court notes that although neither party has furnished a transcript of the proceedings, the Court only recently listened to and carefully considered all of the evidence presented at trial. Based upon that evidence, the Court concludes that there simply is no basis to support plaintiffs' motion for JNOV or new trial.

## II. *Summary*

In conclusion, the Court, having thoroughly read and considered each of the grounds raised in plaintiffs' motion for JNOV or new trial. concludes that this Court did not err and further that there is no basis to support plaintiffs' motion for JNOV or new trial. Accordingly, plaintiffs' motion is DENIED.