670 S.E.2d 1

**Angela YOUMANS as Personal Representative of the Estate of Deonte ELMORE, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF TRANSPORTATION, Respondent.**

No. 4437.

Court of Appeals of South Carolina.

Heard Sept. 17, 2008.

Decided Sept. 24, 2008.

Rehearing Denied Dec. 19, 2008.

Robert N. Hill, of Newberry, and Mark B. Tinsley, of Allendale, for Appellant.

Marshall H. Waldron, Jr., of Bluffton, for Respondent.

ANDERSON, J.:

Deonte Elmore was killed after his car skidded off a wet road and flipped in the median. His mother, Angela Youmans, initiated wrongful death and survival actions against the South Carolina Department of Transportation (DOT) alleging it was negligent in failing to maintain the highway to avoid rutting and not properly maintaining the median's slope. A jury awarded Youmans nine million dollars on the wrongful death claim and two million dollars for the survival action. The circuit judge reduced the judgment by the South Carolina Tort Claims Act caps. Ten months later, the circuit judge granted a new trial pursuant to the thirteenth juror doctrine in an order stating justice had not prevailed due to (1) the brief jury deliberations and (2) because there was "no evidence to support the jury's determination that Deonte was not negligent at all in losing control of his car." We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

On October 17, 2003, Deonte Elmore was the driver and sole occupant in a single-vehicle rollover accident on Highway 301, in Allendale County. The sixteen year old high-school student did not survive.

After attending a football game, Deonte dropped off a friend and began to drive home in his Honda Accord. His mother, Angela Youmans, was returning home after the game and saw her son's car at a stop sign. She called Deonte on his cell phone and discovered he was going the same way. Deonte followed behind his mother, but Youmans drove faster and lost sight of his lights after going around a curve.

Behind Deonte on Highway 301 was Willie Elmore (Elmore), a distant relative who knew Youmans but did not know Deonte at the time. Elmore testified Deonte was traveling without apparent problems in the right, "slow" lane at approximately forty-five to fifty miles per hour. The posted speed limit in the area is sixty miles per hour. After easing past Deonte, Elmore heard a bang and looked in his rear view mirror to see lights "flashing up." The Honda had left the highway, entered the median, and flipped a number of times. Elmore turned around, returned to the site, and found a moaning Deonte lying in the road. Youmans, meanwhile, arrived at her house, heard the loud noise, and became nervous thinking Deonte had enough time to arrive. Unable to reach him on his cell phone, Youmans backtracked down the road until she came upon the scene.

In May 2004, Youmans filed wrongful death and survival actions against DOT. In the complaint, Youmans alleged Highway 301 was severely rutted and Deonte lost control due to water pooled from the evening's rain. Additionally, Youmans asserted a dramatic drop-off in the median caused the Honda to roll. She claimed DOT was negligent for failing to maintain the roadway and the median's slope. DOT answered with a general denial, asserted immunities under the South Carolina Tort Claims Act, and pled the defense of comparative negligence.

The actions were consolidated for trial. Past and present DOT engineers asseverated DOT's duties to (1) inspect and cure any roads pooling water; (2) maintain median slopes to design specifications; and (3) the importance of a median's slope angle in allowing a stray driver to recover and avoid rollovers; Lorraine Williams, the current Resident Maintenance Engineer for Allendale County, admitted the median slope where Deonte wrecked deviated from the specifications. The DOT employees stated they had received no reports or complaints concerning the stretch of Highway 301 at issue. Elmore, who lives in the area, testified it had been raining the night of the wreck. He knew the road to hold water and, at the time of the accident, he said it held "enough to make a car sway." The friend who Deonte had dropped off prior to the wreck told the court Deonte always wore a seat belt, wore a seat belt that evening, and did not use drugs or alcohol.

Youmans called an expert in accident reconstruction whose studies indicated the median's slope caused the car to bottom out and contributed to the rollover's severity. He estimated Deonte left the road traveling at forty-seven miles per hour. Although he could not state conclusively Deonte hydroplaned, he reported finding depressions on the road capable of collecting enough water to create the hazard. Officer James Oliver Freeman of the Allendale County Sheriff's Office was a responder to the crash site. He testified that when he arrived there was water "laying still on top of the road."

DOT called Allendale County Fire Chief Rodney Brett Stanley, Jr., who traveled on Highway 301 when responding to the accident. He did not remember water on the roadway that particular evening, but admitted on cross examination the road holds water at times. Donald Roberts, an expert called by DOT, contended the slope of the road would not allow standing water. Roberts stated "I wasn't able to determine why the vehicle lost control. I was able to rule out the road as being a cause."

At the end of the evidence, Youmans' motion for a directed verdict on DOT's comparative negligence defense was overruled. The trial court denied DOT's motions for directed verdict on the liability issue. The jury was charged on comparative negligence, including Deonte's duties to keep a proper lookout, drive at a reasonable speed, avoid collisions, and use due care. A five question verdict form to be filled out by the jury was explained by the judge.

At 3:45 PM on June 8, 2006, the jury was sent out to begin deliberations. Shortly thereafter, the forelady submitted a request for a copy of descriptions the trial judge had read concerning grief and sorrow, loss of companionship, and mental shock. The jury returned with a verdict at 4:45 PM. On the verdict form, the jury indicated DOT was negligent and this negligence was the proximate cause of Deonte's injuries. In response to the question asking if Deonte was negligent and whether the negligence was the proximate cause of his injuries, the jury answered "No." Damages for the wrongful death action were awarded in the amount of nine million dollars and two million dollars on the survival claim.

Immediately following the jury's discharge, the circuit judge asked if there would be any motions to which the parties responded affirmatively. DOT's motion for judgment notwithstanding the verdict was denied. The judge asked DOT if they were going to move for a remittitur and a new trial to which DOT answered "Yes". When court resumed the next morning, arguments on the motions were heard. At the conclusion, the motion for a new trial absolute was denied with the judge explaining the verdict was not so excessive to shock the conscience of the court. He told the parties he would take under advisement the question of a new trial under the thirteenth juror doctrine and get a ruling out "as soon as I can." Later that day, the judgment was entered on a form that explained:

The jury returned verdicts of $2,000,000 on the survival claim, and $9,000,000 on the wrongful death claim. Because judgments must be entered at the statute cap of $300,000 each, the parties agree it is not necessary to rule on the Defendant's motion for a new trial nisi remittitur. I find the amount of the verdict, while very generous, is not so grossly excessive that it shocks the conscience of the Court, and so I deny the motion for a new trial absolute. I am taking the motion for a new trial under the 13th juror doctrine under advisement. In the meantime, judgment shall be entered in each case in favor of the plaintiff for $300,000.

Nearly ten months later, in an order dated April 10, 2007, the circuit judge granted DOT's motion for a new trial under the thirteenth juror doctrine. The judge reiterated that DOT had moved for a new trial absolute, new trial nisi, and a new trial under the thirteenth juror doctrine. He agreed with DOT that no evidence supported the jury's determination that Deonte was free of negligence. However, the order most heavily relied upon the judge's conclusion the jury could not have given the case full deliberation in forty minutes. Thus, he determined "justice has not prevailed."

### *ISSUE*

Did the circuit court judge err in granting DOT a new trial under the thirteenth juror doctrine due to the length of the jury's deliberations?

## STANDARD OF REVIEW

"Upon review, a trial judge's order granting or denying a new trial will be upheld unless the order is 'wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law.'" *Norton v. Norfolk S. Ry. Co.,* 350 S.C. 473, 479, 567 S.E.2d 851, 854 (2002); *Folkens v. Hunt,* 300 S.C. 251, 254–55, 387 S.E.2d 265, 267 (1990); *S.C. State Hwy. Dep't v. Clarkson,* 267 S.C. 121, 126, 226 S.E.2d 696, 697 (1976); *Vinson v. Hartley,* 324 S.C. 389, 403, 477 S.E.2d 715, 722 (Ct.App.1996); *Sorin Equip. Co., Inc. v. The Firm, Inc.,* 323 S.C. 359, 364, 474 S.E.2d 819, 822 (Ct.App. 1996). This Court's "review is limited to consideration of whether evidence exists to support the trial court's order." *Folkens,* 300 S.C. at 255, 387 S.E.2d at 267; *Vinson,* 324 S.C. at 403, 477 S.E.2d at 722. "As long as there is conflicting evidence, this Court has held the trial judge's grant of a new trial will not be disturbed." *Norton,* 350 S.C. at 479, 567 S.E.2d at 854. Further, in an appeal of an order granting a new trial pursuant to the thirteenth juror doctrine, the appellant "bears the heavy burden of demonstrating to the court that it clearly appeared that the judge's exercise of discretion was controlled by a manifest error of law." *Todd v. Owen Indus. Prods., Inc.,* 315 S.C. 34, 431 S.E.2d 596 (Ct.App.1993) (citing *Gray v. Davis,* 247 S.C. 536, 148 S.E.2d 682 (1966)).

## LAW/ANALYSIS

### I. THE *RAISON D'ÊTRE* OF THE THIRTEENTH JUROR DOCTRINE

Yeomans contends the trial court erred in granting a new trial pursuant to the thirteenth juror doctrine. We agree.

The following excerpt from *Vinson v. Hartley,* 324 S.C. 389, 477 S.E.2d 715 (Ct.App.1996), outlines South Carolina jurisprudential history concerning the thirteenth juror doctrine:

> The seminal case stating the "thirteenth juror" doctrine is *Worrell v. South Carolina Power Co.,* 186 S.C. 306, 195 S.E. 638 (1938). Worrell states:
>
> > Nor does it follow that because under the law the trial judge is compelled to submit the issues to the jury, he cannot grant a new trial absolute. As has often been

said, the trial judge is the thirteenth juror, possessing the veto power to the Nth degree, and, it must be presumed, recognizes and appreciates his responsibility, and exercises the discretion vested in him with fairness and impartiality.

*Worrell,* 186 S.C. at 313–14, 195 S.E. at 641.

A review of the "thirteenth juror" doctrine was undertaken by the appellate entity in *Folkens v. Hunt,* 300 S.C. 251, 387 S.E.2d 265 (1990):

This Court has had an opportunity to reconsider the thirteenth juror doctrine on several occasions. Each time we have refused to abolish the doctrine. We have also refused to require trial judges to explain the reasons for the ruling. The thirteenth juror doctrine is a vehicle by which the trial court may grant a new trial absolute when he finds that the evidence does not justify the verdict. This ruling has also been termed granting a new trial upon the facts. The effect is the same as if the jury failed to reach a verdict. The judge as the thirteenth juror "hangs" the jury. When a jury fails to reach a verdict, a new trial is ordered. Neither judge nor the jury is required to give reasons for this outcome. Similarly, because the result of the "thirteenth juror" vote by the judge is a new trial rather than an adjustment to the verdict, no purpose would be served by requiring the trial judge to make factual findings.

A trial judge's order granting or denying a new trial upon the facts will not be disturbed unless his decision is wholly unsupported by the evidence, or the conclusion reached was controlled by an error of law. When an order granting a new trial is before this Court, our review is limited to the consideration of whether evidence exists to support the trial court's order.

*Folkens,* 300 S.C. at 254–55, 387 S.E.2d at 267 (citations omitted).

The trial judge, sitting as the thirteenth juror charged with the duty of seeing that justice is done, has the authority to grant new trials when he is convinced that a new trial is necessitated on the basis of the facts in the case. *Graham v. Whitaker,* 282 S.C. 393, 321 S.E.2d 40 (1984). Traditionally, in South Carolina, circuit court judges have

the authority to grant a new trial upon the judge's finding that justice has not prevailed. *Todd v. Owen Indus. Prods., Inc.,* 315 S.C. 34, 431 S.E.2d 596 (Ct.App.1993). Similarly, the judge may grant a new trial if the verdict is inconsistent and reflects the jury's confusion. *Johnson v. Parker,* 279 S.C. 132, 303 S.E.2d 95 (1983). *See also Johnson v. Hoechst Celanese Corp.,* 317 S.C. 415, 453 S.E.2d 908 (Ct.App.1995) (under "thirteenth juror doctrine," trial court may grant new trial if judge believes verdict is unsupported by evidence and, similarly, new trial may be granted if verdict is inconsistent and reflects jury's confusion).

*Vinson,* 324 S.C. at 404, 477 S.E.2d at 723.

In *Norton v. Norfolk Southern Railway Company,* 350 S.C. 473, 478, 567 S.E.2d 851, 854 (2002), the South Carolina Supreme Court explained, "the thirteenth juror doctrine is so named because it entitles a trial court to sit, in essence, as the thirteenth juror when [it] finds 'the evidence does not justify the verdict,' and then to grant a new trial based solely 'upon the facts.' " (citing *Folkens v. Hunt,* 300 S.C. 251, 387 S.E.2d 265 (1990)). The supreme court further held, "[T]he result of the 'thirteenth juror' vote by the judge is a new trial rather than an adjustment to the verdict. . . ." *Id.* In essence, the judge, as the thirteenth juror, can hang the jury and start the trial anew.

Our supreme court recently affirmed a court of appeals' decision upholding the grant of a new trial absolute under the thirteenth juror doctrine. *Trivelas v. S.C. Dep't of Transp.,* 357 S.C. 545, 551–52, 593 S.E.2d 504, 508 (2004). The supreme court reasoned the grant was warranted because justice was not served by the jury's verdict, and the evidence did not justify the result. *Id.* at 552, 593 S.E.2d at 508. The *Trivelas* court held granting a new trial under the thirteenth juror doctrine has the same effect as if the jury failed to reach a verdict, and the trial court is not required to give reasons for granting a new trial. *Id.* at 553, 593 S.E.2d at 508 (citing *Folkens,* 300 S.C. at 254, 387 S.E.2d at 267).

█ "The 'thirteenth juror' doctrine is not used when the trial judge has found the verdict was inadequate or unduly liberal and, therefore, is not a vehicle to grant a new trial *nisi additur.*" *Bailey v. Peacock,* 318 S.C. 13, 14–15, 455 S.E.2d

690, 692 (1995); *see also Pinckney v. Winn–Dixie Stores, Inc.,* 311 S.C. 1, 4–5, 426 S.E.2d 327, 329 (Ct.App.1992).

## II. THE THIRTEENTH JUROR DOCTRINE/SUA SPONTE BY THE COURT

Youmans contends the circuit court raised the thirteenth juror doctrine on its own initiative. Therefore, she complains the circuit court violated the ten day time limit provided by Rule 59(d) of the South Carolina Rules of Civil Procedure when it granted a new trial ten months after the entry of judgment. Rule 59(d) states:

> *On Initiative of Court.* Not later than 10 days after entry of judgment, the court of its own initiative may order a new trial for any reason for which it might have granted a new trial on motion of a party. After giving the parties notice and an opportunity to be heard on the matter, the court may grant a motion for a new trial, timely served, for a reason not stated in the motion. In either case, the court shall specify in the order the grounds therefor.

This Court traffics in a milieu of precedential conundrums, but comes to the ineluctable conclusion based on the trial record in the case *sub judice* that the thirteenth juror doctrine was properly before the circuit court. Following the dismissal of the jury, the circuit court and counsel for the parties engaged in the following colloquy:

Court: All right. Are there going to be any motions?

Youmans: Yes, your honor.

DOT: Certainly, we want a judgment for an outstanding verdict.

Court: I deny the motion for judgment notwithstanding the verdict.

DOT: I would like the ten days to re-file on the motions.

Court: I want to hear them now.

DOT: Well, for a minute, I'm beyond what was offered here.

Court: You are going to move for a remittitur? Are you moving for a new trial also?

DOT: Yes, I am.

. . .

The court broke for the night and continued the discussion the next morning:

DOT: The defendant respectfully moves for a new trial absolute.

Court: Okay.

DOT: The grounds I would cite are: one, the defendant believes the court should have bifurcated the trial and tried the issues of liability and damages separately. Secondly, the defendant urges, would say that the court should have granted the negligence per se or, at least, allowed evidence on the negligence per se issue. Thirdly, that the evidence was insufficient to send the evidence to the jury at least on the conscious pain and suffering issue. And fourth, that a new trial absolute is required given the verdict. The defendant would support and find that the verdict was a result of improper considerations, namely reflect their intent to punish which is not part of this trial and should have been on the verdict form compensation, only.

Secondly, the defendant would move for a new trial and nisi remittitur and ask the court to reduce the verdicts to the statutory caps.

Court: All right. The motions for a new trial that relate to my evidentiary rulings and my decisions not to bifurcate the trial are denied. Now, then you had one more motion for a new trial absolute and I'm not sure I understood what that motion was.

DOT: I asked that you grant a new trial because the verdict was a result of improper considerations, namely, that due to the short amount of time the jury was out and the note they sent out evidence that they considered—it seemed to me they sailed right past liability and went right straight to damages. The tenor of their note indicated to me that they were looking—looked every way possible to add money and punish the defendant, the DOT, rather than compensate for the loss. I think that's improper consideration.

Court: All right. To the extent that your motion is based on the speculative hypothesis that the jury might have

intended to punish the defendant rather than award compensation, I deny that motion.

DOT: In addition, the amount of the judgment is shocking and has to be based on improper considerations. It's way too much.

Court: All right. Well, let's focus on that motion. You have anything to argue?

. . .

Court: We're looking at the legal question of whether or not this verdict can stand under a motion for a new trial absolute based on the amount of the verdict.

Youmans: Yes, I'm sure they appreciate that. And that gets to why I'm having a hard time grasping procedurally what we're talking about, because we know that, if we look at *Smalls,* that the amount of the damages is not the judgment, it's not the verdict. The verdict is $600,000.00. $300,000.00 for the wrongful death and $300,000.00 for survival action and (DOT's counsel) agrees with that.

Court: Well, if we were looking at it from the standpoint of a remittitur, you would be correct. And let's talk about this because I think that if—if, I think what the law tells us, that if the verdict is within the range of reasonableness and—or short of the range of shocking the [conscience], then the only thing that the court can do, if anything, is to reduce it. We can't eliminate it and start over. However, if the verdict rises to the level that it shocks the [conscience] because of its amount, then the only thing the court can do is to start over with a new trial. Can't reduce it. And where that line is, of course, is subject to the discretion of the individual judge on the one hand and to a review for abuse of discretion by the appellate court on the other. So, I don't think we're talking about—if all we're talking about is whether or not I can or should reduce this verdict to $600,000.00 or $300,000.00 or whatever it's going to be, then that's an easy question. We can go ahead and do that and move on. But that's not what the motion is. The motion is that this verdict is so excessive—and I'm just stating what the motion is, I'm certainly not indicating any view one way or the other when I say that, but the motion is, if

the amount of the verdict is so grossly excessive that it shocks the [conscience] of the court and clearly indicates that the amount was the result of passion, caprice, prejudice, partiality, corruption or some other improper motive, then that's the motion. And if that's what it is, then I don't think the cap comes into play because the decisions of the supreme court tell us that if that is what it is, I've got to grant a new trial. And so, that's our focus, I think, is whether or not the amount of the verdict is so excessive as to shock the [conscience] of the court and clearly indicate that it is the result of some improper motive. Now, I will tell you, I will say, that I think the verdict is huge. . . . [M]y initial impression is that this is a very large verdict. . . . But that's my initial impression and I that's where I think the focus of my inquiry must be, is simply whether or not the amount of the verdict is so grossly excessive that it shocks the [conscience] of the court. Now, the question about how long they deliberated and other things, I mean, I think that comes up under, I think, under the—if there's a motion on a new trial based on the thirteenth juror doctrine, that's where those arguments become relevant, right now I think we're just talking about the amount of the verdict.

Youmans: And judge, this is more a procedural issue, but as I understood the court's ruling yesterday, I think you wanted the defendant to make new trial motions at that time. Well. 59B says, either you have to make an amend or at the court's discretion. You didn't exercise your discretion or make an amend on anything concerning the issue and so I would say that on this basis it is untimely.

Court: Well, I never like anybody to get tripped up on a procedural step like what you're saying. He made motion for a new trial and when I hear a motion for a new trial I'm hearing that the three bases that I have for a motion for a new trial: motion for *nisi* remittitur, motion for a new trial absolute and motion for a new trial based on the thirteenth juror doctrine. So, that's what I've been thinking about as I have gone through the last—well, overnight, last night and today.

. . .

Court: I've already ruled when I denied the motion for judgment notwithstanding the verdict that the evidence is sufficient to support the verdict. There's no doubt in my mind about that. That based on the testimony and the record, the evidence the jury could have reasonably found that this death was 100% the fault of the Highway Department and 0% of the fault of Deonte but there's—I mean, there's several things that trouble me about it. First of all I think that getting to that point is a complicated analysis and they got there in almost no time. The jury deliberated for a total of about 30 minutes, I mean 45 minutes. About 30 minutes after they started deliberating, they came out with that question. . . .

About 5 minutes after I gave them that, they came back with the verdict so, it raises a question in my mind of whether or not the jury actually spent some quality time deliberating over the liability questions in the case, which I think, regardless of everything we just talked about, I think everything we just talked about illustrates my point, which is not who should or should not win but the liability questions were difficult. And I'm troubled by it and I think the law requires me to study whether or not the verdict here is based on a true and legitimate deliberation over all issues. If they had come back after two minutes with a defense verdict and then it might be the same way.

. . .

Court: I just don't think in light of all that that I can say that this verdict is so excessive it shocked the conscience of the court. So I'm going to deny the motion for a new trial absolute based on the excessiveness of the amount of the verdict. Which leaves me with the motion for a new trial that would have been made under the thirteenth juror doctrine. Now, let's straighten this out. Do you contend that that motion has either not been made or is not properly before me or has not been argued in such a way that I discussed a few minutes ago or do you have any procedural position to take regarding my ruling on that motion?

Youmans: Judge, I think that it was not raised. That it was not before you within ten days of the verdict. You

have the discretion to consider any motion that could have been raised. And so, certainly, you can consider it.

Court: Right. Okay. All right. Well, I'm going to take that question under advisement. I'm going to think about it. And mainly, as I said, I'm going to focus on whether or not I feel the jury sufficiently deliberated on what I see as a complicated set of liability issues in the amount of time that they took. So I'm going to take it under advisement and I'll get a ruling out as soon as I can.

. . .

Court: If either of you want to share with me any of your thoughts or you legal research on the questions of what is the role of the court in second guessing or in considering the quality of the jury's deliberation on a certain subject, then I'd be happy to see that.

. . .

Youmans: And that's in the context of the thirteenth juror doctrine?

Court: Yes. And I could just grant a new trial without even explaining my self if I wanted to under that doctrine. But I'm telling you and I want the record to reflect why— where I'm focusing and I think that the law requires the jury to deliberate. They can't just go in and say "Well, what do you think?" Now, there are some situations where the evidence is so clear one way or the other, that we don't question a verdict that is very quick. In fact, I had a verdict in a DUI case down in Beaufort where the jury deliberated for six minutes. And that was literally from the time they left the courtroom to the time the bailiff came back to say that the jury had reached a verdict. And no body ever called in a vote because the evidence was so clear that the defendant was intoxicated while driving. But here, as I said, I think there are complicated legal issues . . . .

. . .

Court: [T]he law requires the jury to deliberate. And in fact, it's implicit in the instructions. In the instructions, it's implicit in the role of a jury and it's implicit in the fact that there are 12 minds that have to come together as one decision. We also know that the inner workings of a jury

are for the jury. No body gets in there and says you have to do it this way.

In granting a new trial based on the thirteenth juror doctrine, the circuit judge neither acted on his own initiative for purposes of Rule 59(d) nor did he rely upon grounds not in DOT's original motion. DOT expressed concern with the length of jury deliberations and sufficiency of evidence when asking for a new trial. Though DOT did not expressly request a new trial pursuant to the thirteenth juror doctrine, the circuit judge clarified that he considers three bases when presented with a motion for a new trial: new trial nisi remittitur, new trial absolute, and new trial pursuant to the thirteenth juror doctrine. The circuit judge categorized DOT's quality of deliberation concern as a matter relevant under the thirteenth juror doctrine.

A colliquefaction of the judicial and/or counsel statements persuades this Court that the thirteenth juror doctrine was posited to the circuit court for arbitrament.

### III. LENGTH OF JURY DELIBERATIONS AND THE THIRTEENTH JUROR DOCTRINE

In his order granting a new trial, the circuit judge stated his agreement with DOT that no evidence supported the jury's decision that Deonte was free of negligence. However, the quiddity and hypostasis of the order is the court's concernment and advertence to "the quality and length of the jury's deliberations." In the order, the judge stated:

"Traditionally, in South Carolina, circuit court judges have the authority to grant a new trial upon the judge's finding that justice has not prevailed." *Vinson v. Hartley*, 324 S.C. 389, 404, 477 S.E.2d 715 (Ct.App.1996.) Defendant argues there is no evidence to support the jury's determination that Deonte was not negligent at all in losing control of his car. I agree. More importantly, however, the Court's real concern in the quality and length of the jury's deliberations. Observing the jury during the trial, the closing arguments, the jury charge, and the several exchanges during the deliberations, I was left with the firm belief the jury had not deliberated the case adequately.

This is supported by the length of time of the deliberations. In a case of complicated and difficult liability on the part of Defendant, in addition to the difficult question of why Deonte left the road in the first place, it is inconceivable that the jury could have given the case a full deliberation in less than 40 minutes.

The integrity of the justice system demands that all participants in a trial perform their duties faithfully. This is particularly true of the jury, which is entrusted with virtually unreviewable discretion as finders of the facts. Every jury has a duty to deliberate the case before them completely. When the jury fails to carry out this duty, then the fact finding process is flawed, and "justice has not prevailed."

I want to make clear that I do not believe there is any bright line past which a jury must deliberate the confidence of the Court that they have performed their duty. In some cases, even some of significant complexity, a deliberation time of less than 40 minutes would not raise any concern. In this case, however, I have three major concerns. First, the time of the deliberation is inadequate to discuss the complicated issues in the case. Second, there is no evidence to support the jury's finding of no comparative fault. Finally, I drew a very strong impression during the last few phases of the trial, particularly the deliberation phase and when the verdict was announced, that the jury had not in fact deliberated the case. For those reasons, I am convinced that "justice has not prevailed."

 Youmans presented the following testimony for the jury's consideration: (1) eyewitness Elmore stated Deonte was traveling below the speed limit at an estimated forty-five to fifty miles per hour; (2) Youmans' expert opined from his tests that Deonte's car entered the median traveling forty-seven miles per hour; (3) the expert found the Honda's tires to be in good condition; and (4) the friend who rode in Deonte's car prior to the accident said Deonte wore his seatbelt and was sober. Because any negligence on Deonte's part was raised by DOT's defense, the burden was on DOT to prove that negligence. Comparative negligence is an affirmative defense. *Ross v. Paddy*, 340 S.C. 428, 437, 532 S.E.2d 612, 617 (Ct.App.2000). The defendant asserting an affirma-

tive defense bears the burden of its proof. *See, e.g., Cole v. S.C. Elec. & Gas, Inc.,* 362 S.C. 445, 452, 608 S.E.2d 859, 863 (2005) ("It is well-settled that assumption of the risk is an affirmative defense which the defendant bears the burden of proving."); *Sabb v. S.C. State Univ.,* 350 S.C. 416, 428, 567 S.E.2d 231, 237 (2002) (governmental entity bears burden of establishing discretionary immunity as affirmative defense). Our review of the record shows DOT presented no evidence of Deonte's negligence. Indeed, DOT's expert witness merely concluded, "I wasn't able to determine why the vehicle lost control. I was able to rule out the road as being a cause of the rollover." Insofar as this portion of the circuit judge's order is upon the facts, we find it is wholly unsupported by the evidence.

A spate of juridical writings confirms the strict parameters placed upon courts attempting to police jury deliberations based upon a timekeeper mentality. Despite the discretion given a judge by the thirteenth juror doctrine, it does not allow the court to overstep these boundaries *in toto.* Additionally, granting a new trial due to suspicions of deliberation quality is a flagrant deviation from premising a new trial upon the facts. *See Fallon v. Rucks,* 217 S.C. 180, 189, 60 S.E.2d 88, 92 (1950) (reversing order for new trial pursuant to thirteenth juror doctrine when granted not upon the facts, but on "wholly untenable ground of objection to the verdict's form" before amended by jury by consent).

As a general rule, the shortness of time taken by a jury in reaching its verdict has no effect upon the validity of the verdict. The brevity of jury deliberations does not indicate by itself, improper behavior, or that the verdict was the result of error. In this regard, while the verdict should be the result of sound judgment, dispassionate consideration, and conscientious reflection, and the jury should, if necessary, deliberate patiently and long on the issues which have been submitted to them, they may render a valid verdict on very brief deliberation after retiring, especially where the facts are clearly drawn. A court cannot infer misconduct from the duration of the jury's deliberation. The length of time that a jury deliberates has no bearing on, nor does it directly correlate to, the strength or correctness of its conclusions or the validity of its verdict.

89 C.J.S. *Trial* § 792 (2001). "The fact that the jury remained out only a short time before bringing a verdict is not itself ground for a new trial." 66 C.J.S. *New Trial* § 75 (1998).

Our supreme court heard a challenge to a verdict based on the jury's short deliberation in *Thomas v. Atlantic Coast Line R. Co.*, 221 S.C. 462, 71 S.E.2d 403 (1952). Thomas brought an action under the Federal Employers' Liability Act, 45 U.S.C.A., § 51 *et seq.*, for damages for personal injuries suffered on the job. The defendant appealed the verdict favoring Thomas arguing it should be set aside as the result of passion or prejudice due to "(1) its excessiveness in view of the injuries and (2) the fact that the jury deliberated only twenty minutes." *Id.* at 471, 71 S.E.2d at 407. Our supreme court first opined the evidence was sufficient to support the jury's verdict and then explained:

> While it was unusual for the jury to arrive at its verdict in so short a time, we would not be justified in concluding therefrom that the jury acted capriciously or that it was [actuated] by passion or prejudice.
>
> > "Appellate courts should be slow to impute to juries a disregard of their duties, and to trial courts a want of diligence or perspicacity in appraising the jury's conduct." *Fairmount v. Cub Fork Coal Co.*, 287 U.S. 474, 53 S.Ct. 252, 77 L.Ed. 439 [1933].

*Id.*

The brevity of a jury's deliberations did not provide sufficient grounds to warrant a new trial following a murder conviction in *State v. Holland*, 261 S.C. 488, 201 S.E.2d 118 (1973). In Holland, the appellants alleged their motion for a new trial should have been granted because the jury verdict was the result of prejudice and passion. The jury was given the case at 5:15 PM, returned to the courtroom to ask a question at 6:00 PM, and rendered a verdict at 6:55 PM. *Id.* at 499, 201 S.E.2d at 123. Our supreme court ruled:

> In *State v. Chandler*, 126 S.C. 149, 119 S.E. 774, we held in a murder prosecution that the defendant had a fair and impartial trial, though the jury took only nineteen minutes to arrive at a verdict. In the recent case of *State v. DeWitt*, 254 S.C. 527, 176 S.E.2d 143, we held:

> "There is no prescribed length of time for a jury to reach a verdict. Such must of necessity be left to the judgment of the jury. Something more must appear, therefore to warrant interference with a jury's verdict than the mere brevity of their deliberations. 23A C.J.S. Criminal Law § 1368, at page 976."

*Holland,* 261 S.C. at 499, 201 S.E.2d at 123.

This Court addressed the subject in *Parker v. Evening Post Publ'g Co.,* 317 S.C. 236, 452 S.E.2d 640 (Ct.App.1994), a libel and invasion of privacy case. The defendants' motion for a directed verdict on the privacy claim was granted, and the jury returned a verdict for the defendants on the libel claim. On appeal, Parker's arguments included the assertion that the trial court improperly denied his new trial motion based on the thirteenth juror doctrine. We affirmed the denial and noted:

> Parker also appears to argue that the jury did not give due and serious consideration to the case, because it returned the verdict in one hour, thereby ending their deliberations one-half hour before the NCAA basketball tournament was to begin on television. This is rank speculation without any evidentiary support, and we find it to be manifestly without merit.

*Id.* at 247 n. 7, 452 S.E.2d at 647 n. 7. *See also State v. Cox,* 221 S.C. 1, 68 S.E.2d 624 (1951) (affirming capital conviction when jury deliberated only twenty-four minutes); *Bratton v. Lowry,* 39 S.C. 383, 17 S.E. 832 (1893) (no new trial when verdict hastened due to fire alarm in town); *Becker v. Wal–Mart Stores, Inc.,* 339 S.C. 629, 529 S.E.2d 758 (Ct.App.2000) (finding no abuse of discretion in trial judge's denial of motion for new trial absolute after jury deliberated approximately twenty minutes).

## IV. OTHER JURISDICTIONS

The jurisprudence of other state courts similarly abides by this general rule. "It is the evidence and not the time that the jury may have taken in reaching its verdict that is controlling in the consideration of a motion for a new trial." *Mahoney v. Smith,* 78 R.I. 56, 78 A.2d 798, 800 (1951)

Arkansas has refused to grant new trials based on the length of jury deliberations. *D.B. & J. Holden Farms Ltd.*

*P'ship v. Arkansas State Hwy. Comm'n,* 93 Ark.App. 202, 218 S.W.3d 355 (2005), was a condemnation case in which the jury returned a verdict after five minutes. Holden, the landowner, raised in his appeal the issue of juror misconduct. The appellate court affirmed the trial court's denial of a new trial. After Holden was unable to prove jury misconduct or show prejudice, the court annunciated:

> The length of time of jury deliberation is not, of itself, a ground for a new trial. *Dovers v. Stephenson Oil Co.,* 354 Ark. 695, 128 S.W.3d 805 (2003), *Wingfield v. Page,* 278 Ark. 276, 644 S.W.2d 940 (1983); *Breitenberg v. Parker,* 237 Ark. 261, 372 S.W.2d 828 (1963). As the supreme court stated in *Breitenberg:*
>
>> The fact that the jury returned a verdict in about eight minutes after having the case submitted to them does not indicate to use that Beach did not receive a fair trial when the issues of fact were so clearly drawn. It is true that a verdict should be the result of dispassionate consideration and the jury, if necessary, should deliberate patiently until they reach a proper conclusion concerning the issues submitted to them. Yet where the law does not positively prescribe the length of time a jury shall spend in deliberation, the courts will not apply an arbitrary rule based upon the limits of time.
>
> 237 Ark. at 265, 372 S.W.2d at 832 (quoting *Beach v. Commonwealth,* 246 S.W.2d 587 (Ky.1952)).

*Id.* at 359. *See also Walker v. Montana Power Co.,* 278 Mont. 344, 924 P.2d 1339 (1996) (where relative complexity of issues narrowed by court and counsel, and verdict form contained seven questions, not error to refuse to set aside verdict rendered after forty minutes of deliberation); *Locksley v. Anesthesiologists of Cedar Rapids, P.C.,* 333 N.W.2d 451 (Iowa 1983) (three hours spent in deliberations not basis for a new trial).

Orders for new trials based on hasty deliberations have been reversed. The Florida District Court of Appeals, Third District, reversed the grant of a new trial on damages in wrongful death and survival actions in *Park v. Belford Trucking Co.,* 165 So.2d 819 (Fla.Dist.Ct.App. 3rd Dist.1964). The plaintiff argued in part that the jury spent only twelve minutes deliberating liability thus "evidencing an utter lack of

regard for the performance of their sworn duties...." *Id.* at 822. In this case of first impression, the appellate court determined the trial judge erred and observed:

> The courts which have considered this problem universally hold that the length of time within which a jury confers is not *in and of itself* sufficient grounds to grant a new trial. We agree with those courts.
>
> . . .
>
> We do not disagree with the proposition that a trial judge may grant a new trial where it is evident that the jury has not followed the law as instructed or has generally abrogated or failed to fulfill their functions according to law, but a jury verdict arrived at in a short period of time is not *sufficient* evidence to establish the fact that the jury failed to fulfill its function. The short period of time would be *some* evidence, but without more it would be error for the trial judge to grant a new trial.

*Id. See also Lappe v. Blocker,* 220 N.W.2d 570, 574 (1974) (trial court erred in granting new trial because "shortness of time taken by a jury arriving at its verdict has no effect upon the validity of the verdict....").

Federal courts have considered the topic and are not persuaded to grant new trials due to brief jury deliberations alone. The United States Court of Appeals for the First Circuit has instructed, "[n]o matter how complicated the case, brevity in jury deliberations is not, in itself, a basis for scuttling a verdict. Courts cannot hold a stopwatch over a deliberating jury." *Veranda Beach Club Ltd. P'ship v. W. Sur. Co.,* 936 F.2d 1364, 1383 (1st Cir.1991) (citations omitted) (no error denying new trial when jury resolved inconsistency between verdict and answer to a special question in fifteen minutes).

The United States Court of Appeals for the Fourth Circuit held jury deliberations lasting four minutes provided no grounds for a new trial. *Segars v. Atl. Coast Line R.R. Co.,* 286 F.2d 767 (4th Cir.1961). In a case arising from a fatal railroad crossing accident, presentation of the evidence required two days. After the verdict favoring the defendant was read, the plaintiff moved for a new trial arguing the haste of deliberations indicated the jury did not consider the evidence. The court disagreed:

We know of no rule of law which prescribes how long a jury should be required to deliberate before returning its verdict. Of course, as was observed by the District Judge, the verdict should be the result of conscientious deliberation, but the fact that the verdict was returned within a few minutes does not necessarily show that the jury disregarded this duty, and is not sufficient in itself to justify a new trial. *Id.* at 770.

In *Will v. Richardson–Merrell, Inc.*, 647 F.Supp. 544 (S.D.Ga.1986), parents brought negligence and strict liability actions against the manufacturer of a drug alleged to have caused their child's birth defect. Following an eight day trial involving extensive testimony about drug research, the jury deliberated approximately one hour before returning a verdict for the defendant. The parents' motions for judgment notwithstanding the verdict or new trial were denied. On appeal, numerous arguments were offered by the parents including the assertion the brevity of the deliberations meant the jury did not consider the entirety of the vast evidence. *Id.* at 549. The court disagreed stating, "[g]enerally, a short period of deliberation by a jury before returning a verdict does not establish the proposition that the jury did not properly perform its duty. To prevail, plaintiffs must show something more than the mere fact that the deliberations were short." *Id. Cf. Kearns v. Keystone Shipping Co.*, 863 F.2d 177 (1st Cir.1988) (granting new trial when brief jury deliberation was accompanied by verdict contrary to great weight of evidence).

In *Wilburn v. Eastman Kodak Co.*, 180 F.3d 475 (2nd Cir.1999), an employment discrimination action, the Court of Appeals for the Second Circuit found no abuse of discretion in denying the employee's motion for a new trial. Although the jury deliberated twenty minutes, the court explicated, "[a] jury is not required to deliberate for any set length of time. Brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence." *Id.* at 476.

The thirteenth juror doctrine entitles a trial court to act as a thirteenth juror when it finds the evidence does not justify the verdict and it may then grant a new trial based solely on the facts. *Howard v. Roberson*, 376 S.C. 143, 153,

654 S.E.2d 877, 882 (Ct.App.2007) (citing *Norton v. Norfolk S. Ry. Co.,* 350 S.C. 473, 478, 567 S.E.2d 851, 854 (2002)). Though the circuit judge in the case *sub judice* concluded no evidence supported the jury finding Deonte free of negligence, this determination is contrary to the record. The only remaining justification in the circuit court's order, the brief jury deliberations, fails to provide sufficient grounds for a new trial.

## CONCLUSION

We decline to place our approbation and imprimatur upon this thirteenth juror order based upon length of time of deliberations. The Latin phrase *abundans cautela non nocet* (abundant or extreme caution does no harm) is efficacious. Judicial interference with a jury verdict based upon the time of jury deliberations is at best fraught with doctrinal vulnerability.

The jury verdicts as reduced pursuant to the South Carolina Torts Claims Act in the total sum of $600,000 are reinstated.

The order granting a new trial pursuant to the thirteenth juror doctrine is

**REVERSED.**

WILLIAMS and KONDUROS, JJ., concur.